**In re James A. TILMON, Sr., also d/b/a Tilmon Distributing Co., Debtor.**

**James A. TILMON, Sr., Plaintiff,**

**v.**

**Louise Irene TILMON, Defendant.**

**Bankruptcy No. 80 B 00722.**
**Adv. No. 80 A 0613.**

United States Bankruptcy Court,
N. D. Illinois, E. D.

March 11, 1981.

James L. Nachman of Nachman, Munitz & Sweig, Ltd., Chicago, Ill., for plaintiff.

Donald Geiger, Waukegan, Ill., for defendant.

## ORDER

LAWRENCE FISHER, Bankruptcy Judge.

This matter coming on to be heard upon the Amended Complaint of JAMES A. TILMON, SR. for Injunction and Other Relief, seeking, *inter alia*, a determination of the dischargeability of debt claimed to be non-dischargeable pursuant to Clause 5 of Section 523(a) of the Bankruptcy Code, and upon the Amendment to Answer thereto filed by LOUISE IRENE TILMON, Creditor of the above-named Debtor, and the parties appearing by their respective attorneys, and

The Court having examined the pleadings filed in this matter, and having received and examined the evidence adduced, and having received and examined the Memorandum filed by Defendant in support of her position, and having heard arguments of counsel and the Court being fully advised in the premises;

The Court Finds:

1. On December 14, 1958, Plaintiff, JAMES A. TILMON, SR., and Defendant, LOUISE IRENE TILMON, were married to each other. Three children were born to them as a result of said marriage, namely: James Tilmon, Jr., Thera Irene Tilmon, and John Michael Tilmon, ages fifteen, fourteen, and twelve, respectively, at the time of the entry of the Decree of Divorce hereinafter described.

2. On or about February 1, 1970, Plaintiff established Tilmon Productions, a sole proprietorship. Tilmon Productions was an audio-visual production company, reproducing a variety of motion pictures, slide films, and filmstrips. A loan of $15,000.00 was obtained from the First National Bank of Highland Park to finance the business. Plaintiff testified that the bank required dual signatures on the loan documents.

The business was incorporated as Tilmon Productions, Inc. sometime in 1971 or 1972, with the new corporation assuming the assets and liabilities of the sole proprietorship. Plaintiff, JAMES A. TILMON, SR., was named president of Tilmon Productions, Inc. At the time of incorporation, there were two common and two preferred shareholders. Plaintiff owned 12½% of the common stock, and his father, George W. Tilmon, owned the balance. The two preferred shareholders were Amoco Venture Capital Company and Miles Burford. At the time of the entry of the Decree of Divorce, the stock ownership had not changed.

Subsequently, Tilmon Enterprises was formed as a subsidiary of Tilmon Productions, Inc. Plaintiff had no recollection of the date on which Tilmon Enterprises was

formed. As an employee of Tilmon Enterprises, Plaintiff performed services as a consultant for Tilmon Productions, Inc. Tilmon Productions, Inc. compensated Tilmon Enterprises for these services, and Tilmon Enterprises in turn compensated Plaintiff.

3. Defendant, LOUISE IRENE TILMON, worked at Tilmon Productions during 1970 and 1971. During this period, Plaintiff was employed by American Airlines and was also involved in a television program for WTTW. In Plaintiff's absence, Defendant served in whatever capacity was necessary, including bookkeeper, secretary, administrative assistant, and production assistant. Although she did not work every day, there were days that she worked as many as eighteen hours. Defendant was not compensated for these services.

4. In 1972, JAMES A. TILMON, SR. filed a complaint for divorce in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 72 D 755. LOUISE IRENE TILMON filed a counterclaim for separate maintenance. On January 16, 1973, a Decree for Separate Maintenance was entered, which provided in pertinent part as follows:

" . . . .

7. The defendant presently has a net take-home pay of $1,275.00 per month.

 . . . .

9. The parties hereto have settled all other matters by mutual agreement and the terms of that agreement are incorporated herein.

WHEREFORE, IT IS HEREBY ORDERED ADJUDGED AND DECREED:

(a) Defendant's complaint for divorce is voluntarily nonsuited.

(b) A decree of separate maintenance is hereby entered in favor of plaintiff, LOUISE IRENE TILMON, and against defendant, JAMES TILMON.

(c) Defendant is ordered to pay $675.00 per month to plaintiff as separate maintenance, based upon net take-home pay of $1,275.00 per month, with $250.00 per month as alimony, and the balance, or $141.66 per month, per child, as child support. . . .

 . . . .

(i) The custody of the minor children shall be with the plaintiff, subject to all reasonable rights of visitation on the part of the defendant as hereinafter provided.

 . . . .

(m) So long as plaintiff does not earn in excess of $8,000.00 per year, the amount of alimony and child support provided in this decree shall not be reduced based upon plaintiff's changed income.
 . . . ."

A copy of the Decree for Separate Maintenance was offered and received into evidence as Defendant's Exhibit No. 2.

5. From 1972 until June of 1975, Defendant, LOUISE IRENE TILMON, worked as a bookkeeper for Clausen, Inc. In July of 1975, she left Clausen and began working for Bell & Howell at a salary of approximately $8,000.00, which represented an increase of about $1,000.00 from the amount she was earning at the time of the entry of the Decree for Separate Maintenance.

6. Plaintiff's income tax return for 1975 indicates that his gross income for that year was $95,176.00. A copy of the return was offered and received into evidence as Defendant's Exhibit No. 1. On July 9, 1975, Plaintiff's gross earnings were at least $80,000.00. This amount represented a substantial increase from his earning capacity at the time of the entry of the Decree for Separate Maintenance. During the interim period, Plaintiff had been promoted by American Airlines to the position of captain and had also secured a contract with NBC. He was receiving approximately $40,000.00 under a contract negotiated with NBC in December of 1974. Sometime during the spring of 1975, this contract was renegotiated. A copy of a letter written by Ed Planer, Director of News at WMAQ–TV, dated May 9, 1975, was offered and received into evidence as Defendant's Exhibit No. 9. The letter is addressed to Mr. Saul Foos, an attorney then representing Plaintiff, and is signed as "Agreed and Accepted" by

JAMES A. TILMON, SR. In the letter, Mr. Planer states that under the terms of the renegotiated contract, Plaintiff's salary would be $55,000.00 for the first year (retroactive to February 1, 1975), $62,000.00 for the second year, and $71,000.00 for the third year.

In addition to his income from American Airlines, which was at least $25,000.00 for the year 1975, Plaintiff also earned small amounts from speaking engagements as well as his salary from Tilmon Productions, Inc. A copy of a quarterly tax return for Tilmon Productions, Inc., including, *inter alia*, a Wage and Tax Statement, Form W–2, for Plaintiff, JAMES A. TILMON, SR., was offered and received into evidence as Defendant's Group Exhibit No. 10. The W–2 form indicates that Plaintiff's gross earnings from Tilmon Productions, Inc. for the year 1975 was $15,400.00.

7. Sometime during April of 1975, Defendant, LOUISE IRENE TILMON, filed a Petition of Modification of Support in Case No. 72 D 755. A copy of the petition was offered and received into evidence as Defendant's Exhibit No. 3. The petition alleged in pertinent part as follows:

" . . . .

5. That there has been a material change in the relevant circumstances of the parties hereto, to wit:

a. That the Counter-Defendant, Respondent, JAMES TILMON, has received substantial increases in income and is earning in excess of EIGHTY THOUSAND DOLLARS ($80,000.00) per year and is well able to pay additional support for your Petitioner and the minor children of the parties hereto.

b. That your Petitioner has entered Northwestern University in an attempt for further education and to improve her employment capabilities and requires additional funds for her support and the support of the minor children.

6. That your Petitioner is without adequate funds to pay for her costs and attorneys' fees in the prosecution of this her Petition for an increase in support but that the Respondent, Counter-De-

fendant is well able to pay said costs and attorneys' fees herein.

WHEREFORE, your Petitioner prays this Honorable Court:

1. For an entry of an Order of Modification ordering the Respondent, Counter-Defendant to pay to your Petitioner the sum of FIVE THOUSAND DOLLARS ($5,000.00) per year per child as and for support of the minor children of the parties hereto, and an additional sum of TWENTY–FIVE THOUSAND DOLLARS ($25,000.00) per year as and for support of your Petitioner.

2. That the Respondent, Counter-Defendant be ordered to pay a reasonable sum as and for costs and attorneys' fees of your Petitioner for prosecution of this her Petition for Modification of Support. . . . . ''

Defendant, LOUISE IRENE TILMON, testified that although the idea of divorce had been considered, she had not yet decided to grant Plaintiff a divorce and appeared in court on July 9, 1975 for the hearing on her petition to increase support. Plaintiff had been seeking a divorce for quite some time but apparently did not have grounds. During the period that the Decree for Separate Maintenance was in effect, there was a great deal of financial bickering between the parties. Indeed, at the hearing on the adversary complaint, when Defendant's attorney inquired as to what financial information Plaintiff brought into court on July 9, 1975 relative to the alleged "buy-out" of Defendant's interest in Tilmon Productions, Inc. hereinafter discussed, Plaintiff responded, "I didn't have anything. I didn't go there to court for that purpose. I went there to argue, like we did about every two weeks."

A pre-trial conference was held that day on Defendant's petition, and the judge presiding over the matter interviewed the attorneys concerning the relative incomes of the parties and the duration of the marriage. The judge suggested that the parties work toward a decree of divorce rather than continuing with the separate maintenance action. He indicated that the sepa-

rate maintenance relationship was unproductive and that it would best serve Defendant's interests if the relationship were terminated and all matters finally decided. There was also some discussion to the effect that the divorce statute might be modified to provide for no-fault divorce and that Plaintiff would be able eventually to obtain a divorce anyhow.

8. Defendant's attorney at the July 9th hearing, Fred Geiger, prepared a list of demands and communicated them to Plaintiff's counsel at the hearing, Mr. Flanagan. The list, marked as Defendant's Exhibit No. 4, was used to refresh Mr. Geiger's recollection but was not admitted into evidence. Mr. Geiger testified that the aforesaid demands were substantially as follows: Plaintiff, JAMES A. TILMON, SR., was to pay all outstanding bills as well as all costs and attorney's fees; he was to pay $2,100.00 per month as alimony and $400.00 per month per child as child support; he was to name the children as beneficiaries of his retirement benefits, maintain health insurance programs and provide for the children's medical and dental needs, and maintain $200,000.00 in life insurance to secure payment of alimony; he was to keep the marital home and to give Defendant $12,000.00 as a down payment on the purchase of a new house; Defendant, LOUISE IRENE TILMON, was to keep the furniture; Plaintiff was to provide airline passes and pay college expenses for the children, and he was to pay for their extracurricular activities, such as music lessons; he could claim two children as income tax deductions and Defendant could claim one child; finally, Plaintiff was to buy a new car for Defendant.

9. A Decree of Divorce was entered on July 9, 1975 in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 74 D 2096, entitled James Tilmon, Plaintiff, Counter-Defendant, vs. Louise Irene Tilmon, Defendant, Counter-Plaintiff, which provided in pertinent part as follows:

" . . . .

2. That the Complaint of the Plaintiff, JAMES TILMON, be and the same is hereby dismissed.

7. That THERA IRENE TILMON and JOHN MICHAEL TILMON presently reside with the Counter-Plaintiff herein and JAMES TILMON, JR. presently resides with the Counter-Defendant herein.

. . . .

10. That the parties have entered into a Property Settlement Agreement, oral in nature, and testified to by the Counter-Plaintiff in Open Court and consented thereto by the Counter-Defendant in Open Court and that terms of said Property Settlement Agreement are as follows:

A. That the Counter-Plaintiff shall have the sole care, custody, control and education of the minor children of the parties; namely: THERA IRENE TILMON and JOHN MICHAEL TILMON, and the Counter-Defendant shall have the sole care, custody, control, and education of the minor child of the parties; namely: JAMES TILMON, JR., but that the award of custody herein shall be subject to modification upon the final determination by the Court of presently pending Petitions for Modification of Child Custody in 72 D 755 and that said Petitions are to be consolidated with this cause.

B. That the Counter-Defendant, JAMES TILMON, shall pay to the Counter-Plaintiff, LOUISE IRENE TILMON, the sum of TWO HUNDRED FIFTY DOLLARS ($250.00) per month per child as child support for each child residing with or under the custody of the Counter-Plaintiff.

C. That the Counter-Defendant shall pay to the Counter-Plaintiff as alimony in gross the sum of ONE HUNDRED TWENTY–ONE THOUSAND DOLLARS ($121,000.00) to be paid at a rate of ONE THOUSAND DOLLARS ($1,000.00) per month for one hundred and twenty-one (121) months.

D. That the Counter-Plaintiff shall be the owner of the marital home located at 1314 St. Johns Avenue in Highland Park, Illinois, free and clear of any interest that the Counter-Defendant may have had in said premises and the Counter-Defendant shall execute all documents necessary to convey his right title and interest in said real estate within thirty (30) days of the entry of this Decree, and if said Counter-Defendant does not execute the necessary documents to effectuate the transfer then an Associate Judge or such other officer of this Court as may be directed by this Court shall execute such deed or document or conveyance to transfer all of the right title and interest of said Counter-Defendant, JAMES TILMON, to the Counter-Plaintiff, LOUISE IRENE TILMON.

E. That LOUISE IRENE TILMON shall be declared to be the sole owner of the 1969 Buick Automobile, free and clear of any interest which the Counter-Defendant may have had in said vehicle.

F. That the Counter-Plaintiff shall be declared the sole owner of all of the household furniture, furnishings and personal effects located in the marital home at 1314 St. Johns Avenue in Highland Park, Illinois.

G. That the Counter-Defendant shall maintain his present life insurance policies with American Airlines in the amount of EIGHTY THOUSAND DOLLARS ($80,000.00) with an additional accidental life benefit of TWENTY THOUSAND DOLLARS ($20,000.00) naming the Counter-Plaintiff as sole beneficiary thereunder for the purpose of securing payment of award of alimony in gross hereinabove set forth. It is agreed, however, that the Counter-Defendant may reduce the face value amount of the life insurance policies as the amount remaining due on the award of alimony in gross is reduced. However, at no time shall the face value of the insurance policies be less than the outstanding amount due and unpaid on the award of alimony in gross.

H. That the Counter-Defendant shall maintain health insurance for all of the minor children of the parties and shall be responsible for all extraordinary medical, dental, optical, pharmaceutical, hospital, prosthetic or xray needs of such minor children.

I. That the Counter-Defendant shall name the children of the parties as contingent beneficiaries under his retirement benefit program with American Airlines.

J. That the Counter-Plaintiff shall claim JOHN MICHAEL TILMON as an income tax deduction on her income tax returns and the Counter-Defendant shall claim THERA IRENE TILMON as a dependent on his income tax returns.

K. That the Counter-Defendant, JAMES TILMON, shall pay to FRED A. GEIGER at 33 North County Street, Waukegan, Illinois, the sum of FIVE THOUSAND DOLLARS ($5,000.00) as and for the Counter-Plaintiff's attorney's fees in the within cause.

WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

. . . .

4. That the Property Settlement Agreement, hereinabove set forth in Paragraph No. 10, Sub-paragraphs A through L, inclusive, be and the same is hereby confirmed and merged in this Decree of Divorce and the duties and obligations of the parties thereunder are made enforceable hereby.

. . . . "

A copy of the Decree of Divorce was offered and received into evidence as Plaintiff's Exhibit No. 1. At the time of the entry of the decree, the equity in the marital home amounted to $15,000.00.

10. Mr. Geiger and Defendant, LOUISE IRENE TILMON, testified that during the hearing, there was some discussion as to the amount of alimony that could be awarded. The judge indicated that he would not award the amount requested by Defendant, but that he could award $1,000.00 per month as alimony. At that time, Mrs. Tilmon was enrolled in an MBA course at Northwestern University, and it was

projected that her earning capacity would probably not improve for at least five or six years. Mr. Geiger testified that the judge presiding over the hearing suggested that the payments continue for a period of 121 months in order to render them deductible for income tax purposes by JAMES A. TILMON, SR.[1] Mrs. Tilmon felt that at the end of the 121 month period, she would be self-sufficient, and the award was accordingly included in the agreement and the decree. The testimony establishes that Plaintiff's obligation to make these payments would not terminate upon Defendant's death or remarriage.

11. Plaintiff, JAMES A. TILMON, SR., testified that the $121,000.00 award represented a settlement of any claim that Mrs. Tilmon might have against Tilmon Productions, Inc. arising from her having worked for the company without pay. Plaintiff stated that Mrs. Tilmon informed him one or two months prior to the entry of the Decree of Divorce that she felt she had a right to the company's profits and that her attorney would see to it that she obtained an appropriate award. Plaintiff further testified that at the July 9th hearing, Defendant's attorney, Mr. Geiger, insisted that LOUISE IRENE TILMON be awarded half of the company. Plaintiff's attorney responded that Tilmon Productions, Inc. was not hers to obtain and that the company would in any event be of little value to Defendant, as it could not function in its normal fashion without JAMES A. TILMON, SR.

Plaintiff also testified that Defendant and her attorney alleged at the hearing that Plaintiff was the true owner of all the common stock of Tilmon Productions, Inc. and that his father's alleged 87½% ownership was merely another means of denying Defendant access to the company's valuable assets. Plaintiff stated that the two attorneys negotiated a lump sum settlement of $121,000.00 and that a payment period of 121 months was decided upon because of certain tax considerations.

Defendant testified that on one or more of the many occasions that she was in court during the period that the Decree for Separate Maintenance was in effect, Tilmon Productions, Inc. may have been discussed, but that the subject was not mentioned on July 9, 1975. Mr. Geiger testified that as he recalled, Tilmon Productions, Inc. was mentioned twice on that day, once in the presence of Defendant, LOUISE IRENE TILMON, and once in her absence. However, he stated that in each of these instances, the subject was raised not in connection with any "buy-out" of an interest in the company, but in connection with the monthly payments that Plaintiff's income could accommodate. Plaintiff and his attorneys represented that Tilmon Productions, Inc. had substantial debts guaranteed by Plaintiff and that in determining the size of the monthly payments, the $80,000.00 income figure should be adjusted to reflect these obligations.

Both Defendant and Mr. Geiger testified that they made no demand for an interest in Tilmon Productions, Inc. Indeed, Defendant contends that she had no interest in the company and that it was not in any way considered during the negotiations at the July 9th hearing.

Plaintiff admits that he made no statement at the divorce prove-up concerning Tilmon Productions, Inc. Mr. Geiger, who was also present at the prove-up, stated that no testimony whatsoever was taken concerning the company.

12. Both Plaintiff and Mr. Geiger testified that financial records for Tilmon Productions, Inc. were requested by Defendant. Defendant stated that the information was requested for the purpose of determining Plaintiff's earnings from Tilmon Productions, Inc. during the relevant period.

13. There is conflicting testimony as to the value of Tilmon Productions, Inc. on July 9, 1975. Defendant testified that she had reviewed several profit and loss statements and that all of the statements reviewed showed an operating loss. One such

1. See I.R.C. §§ 71, 215.

statement was for the period ending in May of 1975. There was also testimony that at the time of the entry of the Decree of Divorce, Tilmon Productions, Inc. was substantially in debt.

Plaintiff introduced into evidence three unaudited financial statements for Tilmon Productions, Inc. The first, which was offered and received into evidence as Plaintiff's Exhibit No. 2, consisted of an operating statement, reflecting sales and expenses for the period ending June 30, 1972, as well as a balance sheet at June 30, 1972. The balance sheet shows assets of $170,065.50 and a net worth of $18,226.23. The operating statement shows income for a three and one-half month period of $28,458.55 and a net loss of $16,773.77. The second statement, offered and received into evidence as Plaintiff's Exhibit No. 3, is a balance sheet at November 30, 1974, and the third statement, offered and received into evidence as Plaintiff's Exhibits Nos. 4A and 4B, is a balance sheet at June 30, 1975. The balance sheet at November 30, 1974 shows assets of $226,958.81 and a net worth of $126,564.39, and the balance sheet at June 30, 1975 shows assets of $206,509.73 and a net worth of $55,863.95.

Another set of financial statements was offered and received into evidence as Defendant's Exhibit No. 5, consisting of an unaudited balance sheet at May 31, 1975 and a profit and loss statement for the three month period ending May 31, 1975. The balance sheet shows assets of $208,-883.82 and a net worth of $69,398.63. The profit and loss statement shows total sales for the period of $94,625.83 and a net loss, before taxes, of $23,092.80.

When asked whether Tilmon Productions, Inc. ever showed a taxable gain, Plaintiff responded that he could not recall the specifics and admitted that the company may have shown a loss during the years 1973 through 1975. In attempting to establish the value of Tilmon Productions, Inc., Plaintiff relied primarily on the company's growth potential and the fact that greater expenses are incurred by a business during its formative years. He testified that on July 9, 1975, Tilmon Productions, Inc. had grown to annual sales of over $500,000.00. His expectations at the time were that the company would be generating annual sales of $1,000,000.00 within another year and that it would continue to grow at that pace. Plaintiff further testified that it was on the basis of these expectations that he arrived at the figure of $121,000.00 for the purchase of Defendant's interest in the company. In this connection, he also emphasized that in 1974, he was able to draw a salary of $60,-000.00 from Tilmon Productions, Inc.

Dividends were never declared on either the preferred or the common stock of Tilmon Productions, Inc. The company is presently being liquidated under Chapter 7 of the Bankruptcy Code.

14. On January 18, 1980, JAMES A. TILMON, SR. filed his voluntary petition in bankruptcy herein.

15. On or about April 15, 1980, Defendant served Plaintiff with a Notice of Motion in Case No. 74 D 2096 and a Petition for Rule to Show Cause why he should not be held in contempt for refusal to make payments on the award of $121,000.00 and the award of attorney's fees contained in the Decree of Divorce.

16. On April 28, 1980, after notice and a hearing, this Court entered a temporary restraining order enjoining LOUISE IRENE TILMON and her attorneys from filing the aforesaid Petition for Rule to Show Cause and from commencing or continuing all other acts to enforce the provisions of the Decree of Divorce entered on July 9, 1975. The Court set a hearing for April 29, 1980 to determine whether a preliminary injunction should issue pursuant to the instant adversary complaint.

17. On May 21, 1980, this Court entered an order preliminarily enjoining LOUISE IRENE TILMON and her attorneys from filing the aforesaid Petition for Rule to Show Cause in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, and from commencing or continuing all other acts to enforce the provisions of the Decree of Divorce entered on July 9, 1975 relating to Plaintiff's debts to Defend-

ant thereunder, other than such debts, if any, for child support, the preliminary injunction to remain in effect pending this Court's determination of the dischargeability of the Plaintiff's debts to Defendant under the provisions of the aforesaid Decree of Divorce.

The Court Concludes and Further Finds:

1. § 523(a) of the Bankruptcy Code provides in relevant part as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

. . . ."

■ 2. In determining what constitutes alimony, maintenance, or support for purposes of dischargeability, this Court is not bound by the label which state courts place upon a decree, but must make the determination in accordance with a federal standard. *See* H.R.Rep.No.595, 95th Cong., 1st Sess. 364 (1977), *reprinted in* [1978] U.S. Code Cong. & Ad.News, pp. 5787, 6320. The definition of "alimony" within the purview of the exception to dischargeability is firmly established by case law:

"It is well settled that '[a]limony does not arise from any business transaction, but from the relation of marriage. It is not founded on contract, express or implied, but on the natural and legal duty of the husband to support the wife,' [*Audubon v. Shufeldt*, 181 U.S. 575, 577, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901)] and it is the obligation based on this duty which

is saved from discharge in bankruptcy by Section 17, sub. a(2) of the Act. *Wetmore v. Markoe*, 196 U.S. 68, 76, 25 S.Ct. 172, 49 L.Ed. 390 (1904)."

*Norris v. Norris*, 324 F.2d 826, 828 (9th Cir. 1963). *See Nichols v. Hensler*, 528 F.2d 304, 307 (7th Cir. 1976); *In re Jones*, 518 F.2d 678 (9th Cir. 1975); *Damon v. Damon*, 283 F.2d 571 (1st Cir. 1960).

■ While federal law provides the definition of "alimony" for purposes of dischargeability, an examination of state law may be necessary to ascertain the incidents of an award in order to determine whether it fits within that definition. *See* this Court's discussion in *In re Pelikant*, 5 B.R. 404 (N.D.Ill.1980).

3. Plaintiff makes much of the fact that the subject payments do not terminate upon Defendant's death or remarriage. However, under the Divorce Act in effect at the time of the entry of the Decree herein, a court could make a nondefeasible award of support.

Section 18 of the former Divorce Act, Ill.Rev.Stat. ch. 40, § 19 provided in pertinent part as follows:

"When a divorce is decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just . . . . The court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable. . . . . A party shall not be entitled to alimony and maintenance after remarriage; but, regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid installments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree.

. . . ."

The type of allowance ordinarily awarded under the section was a periodic allowance consisting of payments for an indefinite period of time and unusually for an indefinite total sum. *See Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, 729 (1950, *aff'd, Walters v. Walters*, 409 Ill. 298, 99 N.E.2d 342 (1951). Whether a spouse was entitled to periodic alimony depended upon his or her needs and the other spouse's ability to pay. *Palacio v. Palacio*, 33 Ill.App.3d 1074, 339 N.E.2d 427, 430 (1975); *see Norris v. Norris*, 16 Ill.App.3d 879, 307 N.E.2d 181, 182 (1974). The court might also consider the duration of the marriage. *See Comstock v. Comstock*, 55 Ill.App.3d 140, 12 Ill.Dec. 841, 370 N.E.2d 645, 650 (1977).

Under Section 18, an allowance of periodic alimony was judicially preferred, in order that the payments could remain within the court's control. However, under certain circumstances, the court could award a "settlement in lieu of alimony", often referred to as "alimony-in-gross", where the paying spouse's conduct or occupation afforded no security for periodic payments. Such special circumstances have been found where there is a history of financial bickering between the parties. *See Riordan v. Riordan*, 47 Ill.App.3d 1019, 8 Ill.Dec. 254, 365 N.E.2d 492, 496 (1977); *Hall v. Hall*, 18 Ill.App.3d 583, 310 N.E.2d 186, 189 (1974).

Gross alimony was, however, a form of alimony and could not, therefore, be awarded unless the recipient spouse was entitled to alimony. *Persico v. Persico*, 409 Ill. 608, 100 N.E.2d 904, 906 (1951). The only other requirement was that the award be equitable. *Id.* As such an award is based primarily upon the relative incomes and needs of the parties, it is alimony for purposes of the nondischargeability provisions of the Bankruptcy Code. The fact

that Section 18 expressly makes such an award nondefeasible upon death or remarriage does not determine the nature of the award for dischargeability purposes.

4. As previously noted, Plaintiff contends that the subject award represents a division of property based upon Defendant's "special equities" in Tilmon Productions, Inc.[2] While the award is labeled "alimony-in-gross", the characterization in the settlement agreement is not dispositive of the issue of dischargeability, for it is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance. This Court may look behind the agreement and the decree to determine the essential nature and character of the liability for purposes of determining the issue of dischargeability of debt. In making this determination, the Court must consider, in addition to the other evidence presented, the decree and the agreement as a whole in order to ascertain the intention of the parties.

5. Defendant went to court on July 9, 1975 on a petition to increase the amount of alimony that she was receiving pursuant to the Decree for Separate Maintenance. At the hearing that day, the court heard testimony and interviewed the attorneys concerning the relative incomes and needs of the parties. The evidence establishes that on July 9, 1975, Defendant was earning only $8,000.00 per year and was enrolled in an MBA program at Northwestern University. She had already been receiving alimony payments under the Decree for Separate Maintenance and, although her annual income had increased by $1,000.00 and one child had since gone to live with his father, her position had not materially changed. In light of the fact that she had the added

---

2. A "special equities" claim under the Divorce Act authorized the transfer of property from the spouse holding title to the property to the other spouse upon proof of financial contribution in the form of money or services beyond those customarily performed in the marriage relationship. Ordinarily, such an award required strict pleading and proof. The relevant provision was Section 17 of the former Divorce Act, Ill.Rev.Stat., ch. 40, § 18, which provided as follows:

"Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

burden of tuition payments, her situation might even have deteriorated. In contrast, Plaintiff's annual income was $80,000.00, representing a dramatic increase from his earnings at the time of the entry of the Decree for Separate Maintenance.

Defendant was clearly entitled to an award of alimony. It is worth noting that an award of alimony-in-gross would have been particularly appropriate under the circumstances prevailing at the time of the entry of the Decree of Divorce. Plaintiff's own testimony indicates that there was a history of financial bickering between the parties during the separate maintenance relationship. It may be inferred that for this reason, the judge presiding over the matter encouraged a resolution which would completely and finally determine the respective rights and duties of the parties.

It is also noteworthy that no mention whatsoever of Tilmon Productions, Inc. is made in the Decree of Divorce. The subject award appears in the decree immediately after the provisions for child custody and support and is separable and segregable from the property provisions of the decree. Although the parties' agreement is referred to as a Property Settlement Agreement, the subject award is several times referred to as either alimony or alimony-in-gross, and while not determinative of the nature of the payments involved, the terms used and approved of by the parties may be considered as some evidence of their intent.

None of the demands made by Defendant or her attorney at the July 9th hearing had anything to do with an interest in Tilmon Productions, Inc. The Court finds Plaintiff's testimony to the contrary not credible. The fact that Defendant requested financial statements concerning Tilmon Productions, Inc. adds nothing to Plaintiff's position and is entirely consistent with Defendant's desire to ascertain the extent of Plaintiff's income at the time of the divorce. The subject award was considered by each of the parties hereto as alimony and was included by them as such in their agreement.

The evidence adduced concerning the value of Tilmon Productions, Inc. supports this conclusion. Defendant testified that all the profit and loss statements she reviewed showed an operating loss. Plaintiff's Exhibit No. 2 shows a net loss of $16,773.77 for a three month period in 1972 and a net worth of only $18,226.23. The only other profit and loss statement introduced into evidence was contained in Defendant's Exhibit No. 5 and showed a net loss, before taxes, of $23,092.80 for the three month period ending May 31, 1975, approximately five and one-half weeks before the divorce hearing. While the net worth of the company on November 30, 1974 is shown as $126,564.39 on Plaintiff's Exhibit No. 3, Plaintiff's Exhibit No. 4A indicates that the net worth of the company had decreased to $55,863.95 by June 30, 1975, approximately one week before the divorce hearing.

Even assuming that Plaintiff was the true owner of all the common stock in Tilmon Productions, Inc. on July 9, 1975, a price of $121,000.00 for one half of that stock would have been totally unwarranted under the circumstances. In considering whether $121,000.00 might have been a reasonable price for one half of the common stock in Tilmon Productions, Inc., this Court cannot rely on Plaintiff's unsubstantiated claims concerning the growth potential of the company. Plaintiff's emphasis on the fact that the company was able to pay him a salary of $60,000.00 in 1974 is also misplaced. The salary paid to an officer upon whose services the well-being of the company substantially depends would not necessarily be a reliable measure of the company's financial condition. Moreover, Plaintiff's salary from Tilmon Productions, Inc. had dwindled to $15,400.00 by the following year.

Assuming Defendant would have had a claim for special equities in Tilmon Productions, Inc., any such claim would have been worth far less than the amount presently in controversy. It should also be noted that despite the elaborate titles of "administrative assistant" and "productions assistant", it appears that Defendant's services for Tilmon Productions, Inc. were primarily secre-

tarial in nature. There is a certain inconsistency between Plaintiff's position that his wife played an integral part in the creation and development of the company and his contention that he was the principal movant in the operation.

6. The award of $121,000.00 contained in the Decree of Divorce, payable at the rate of $1,000.00 per month for 121 months, is alimony, maintenance, or support within the meaning and purview of § 523(a)(5) of the Bankruptcy Code.

7. Ill.Rev.Stat. ch. 40, § 16, which was in force at the time of the entry of the Decree for Divorce, provided in pertinent part as follows:

> "In all cases of divorce the court at any ·time after service of summons and proper notice to the husband or wife may require the husband to pay to the wife or pay into court for her use or may require the wife to pay to the husband or pay into court for his use during the pendency of the suit such sum or sums of money as may enable her or him to maintain or defend the suit; . . . . The court may, in its discretion reserve the question of the allowance of attorney's fees and suit money until the final hearing of the case and may then make such order with reference thereto as may seem just and equitable, regardless of the disposition of the case . . . .
>
> . . . .
>
> In all actions for divorce in which the court grants to the wife or husband, as the case may be, attorney's fees in the prosecution or defense of the action, as the case may be, such fees may, in the discretion of the court, be made payable in whole or in part, to the attorney entitled thereto, and judgment may be entered and execution levied accordingly. . . . ."

The controlling consideration in determining whether to grant attorney's fees under the above-quoted provision was the relative financial resources of the parties. See *Kaufman v. Kaufman*, 22 Ill.App.3d 1045, 1050, 318 N.E.2d 282 (1974); *Lauzen v. Lauzen*, 81 Ill.App.2d 472, 476, 225 N.E.2d 427 (1967). Consequently, an award of attorney's fees in an Illinois divorce proceeding was ordinarily in the nature of support.

This Court acknowledges that the parties to a divorce might take legal fees into account in dividing their property, and the inclusion in the property settlement agreement of a provision for payment of fees might, in such a case, be considered a division of property, dischargeable in bankruptcy.

In the case *sub judice*, the provision concerning attorney's fees is part of the property settlement agreement incorporated in the Decree of Divorce. It does not appear, however, that the parties included the provision for attorney's fees as part of a division of property. No evidence was presented nor argument made by Plaintiff concerning the dischargeability *vel non* of the award of attorney's fees. The Court concludes that the parties included it and the court in its Decree of Divorce approved it on the basis of Plaintiff's superior earning power. The award of attorney's fees to Fred Geiger is alimony, maintenance, or support within the meaning and purview of § 523(a)(5) of the Bankruptcy Code.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Amended Complaint of JAMES A. TILMON, SR. for Injunction and Other Relief, seeking, *inter alia*, a determination of the dischargeability of debt claimed to be nondischargeable pursuant to Clause 5 of Section 523(a) of the Bankruptcy Code be, and the same is hereby denied, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the obligation of JAMES A. TILMON, SR. to pay $121,000.00 to LOUISE IRENE TILMON, created by the Decree of Divorce entered in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 74 D 2096, entitled James Tilmon, Plaintiff, Counter-Defendant, vs. Louise Irene Tilmon, Defendant, Counter-Plaintiff, be, and the same is hereby declared nondischargeable in bankruptcy in the amount and manner of payment as provided therein, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the debt of JAMES A. TILMON, SR. to Fred A. Geiger, created by the Decree of Divorce entered in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, Case No. 74 D 2096, entitled James Tilmon, Plaintiff, Counter-Defendant, vs. Louise Irene Tilmon, Defendant, Counter-Plaintiff be, and the same is hereby declared nondischargeable in bankruptcy in the amount and manner of payment as provided therein, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the order entered by this Court on May 21, 1980, preliminarily enjoining LOUISE IRENE TILMON and her attorneys from filing the Petition for Rule to Show Cause in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, and from commencing or continuing all other acts to enforce the provisions of the Decree of Divorce entered on July 9, 1975 relating to Plaintiff's debts to Defendant thereunder, be, and the same is hereby dissolved.