In re H. Marvin BEDINGFIELD, M.D., Debtor.

Rebecca B. BEDINGFIELD, Appellant,

v.

Herbert Marvin BEDINGFIELD, Appellee.

No. CV483–109.

United States District Court, S.D. Georgia, Savannah Division.

Oct. 7, 1983.

C. James McCallar, Jr., Savannah, Ga., for plaintiffs.

Thomas M. Ramee, Atty. at Law, Savannah, Ga., for defendants.

## ORDER

B. AVANT EDENFIELD, District Judge.

Before the Court is an appeal and cross-appeal of an order of the bankruptcy judge in a proceeding pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. § 523(a)(5), in which the bankruptcy judge determined whether certain obligations imposed on the debtor/appellee by a separation agreement/divorce decree constituted nondischargeable alimony, maintenance or support, or whether the obligations were in the nature of a dischargeable division of property. Following an evidentiary hearing,

the bankruptcy judge made the following findings of fact.

### FINDINGS OF FACT

The material facts are not in dispute. The Debtor was divorced from the Defendant/Ex-Wife (Appellant) on February 27, 1981, after seventeen years of marriage. Three children were born to the parties and all three are still minors.

The parties entered into a separation agreement on August 31, 1980. That agreement was incorporated into the divorce decree entered by the Chatham County Superior Court. In summary, the decree imposes the following obligations on the Debtor:

1. To pay, "[T]he sum of $1,500.00 per month for the support and maintenance of the Wife until such time as she dies or remarries, whichever event first occurs." [¶ 14(a)]

2. To pay, "[T]he additional sum of $432.69 per month as alimony for twelve years, which payments shall not abate upon her remarriage, and in the event of her death, shall be payable to her estate." [¶ 14(a)] This monthly payment is equal to the monthly installment of the first mortgage on the parties' former marital residence.

3. To pay $350.00 per month per child for "support and maintenance" of the parties' children. This obligation terminates as each child reaches the age of 18 years, but will continue until the children have completed requirements for a four-year college degree if they choose to go to college. [¶ 14(b, c, d)]

4. All alimony and child support payments shall be increased annually by the same percentage as the Debtor's "gross income" exceeds $100,000.00 per year. [¶ 14(e)(1)]

5. To pay all expenses incurred by each of the children to secure an elementary and high school education in private school, including books, tuition, fees and transportation. [¶ 15]

6. To pay all costs for tuition and books incurred by the wife in seeking a law degree from the University of Georgia. [¶ 16] The Defendant already has a Masters Degree.

7. To provide medical insurance for the children and to pay all deductible amounts under the insurance; also to pay for all dental or orthodontic expenses incurred for the children. [¶ 17]

8. To pay all of the children's expenses for college and one graduate degree. [¶ 18]

9. To pay the premiums on two $100,000.00 insurance policies on the Debtor's life, with the Defendant as beneficiary of one policy and the children as beneficiaries of the second policy (with the Defendant named as trustee). [¶ 10]

10. A disability insurance policy sufficient to guarantee the child support payments of $350.00 per month, per child. [¶ 10]

11. To pay a second mortgage to the Citizens and Southern National Bank. [¶ 11(a)]

12. To pay off any outstanding liens on a 1972 Mercedes automobile transferred to the Defendant. [¶ 11(b)]

13. To pay "all outstanding account balances of the parties presently due, and all loans and obligations incurred by the parties prior to the date of this agreement, including, but not limited to all sums due the following persons or entities: Internal Revenue Service; First Bank of Savannah; Savanah Bank and Trust Company; The Citizens & Southern National Bank; Walter Bedingfield; the American Medical Association; Little & Black, Inc.; Southern Bank & Trust; IBM." [¶ 12]

Assuming that the Debtor's gross income is $100,000.00 or less, his obligations under the divorce decree are approximately $60,000.00 per year.

The Debtor is a self-employed orthopedic surgeon. His gross income was in excess of $100,000.00 for 1979 and 1980, it was approximately $70,000.00 in 1981. The Debtor's ex-wife is a full-time law student

at the University of Georgia with no earned income.

The Defendant is not living in the parties' former marital residence in Savannah. She is using it as rental property while she and the parties' children reside in a rented house near the University in Athens, Georgia.

## CONCLUSIONS OF BANKRUPTCY COURT

The bankruptcy judge determined that four factors must be met for a debt to be excepted from discharge under section 523(a)(5) of the Bankruptcy Code.

The debt must be:

1. Directly payable to a spouse, former spouse or child of the debtor;

2. Designated as alimony to maintenance for, or support of such spouse or child;

3. The result of a separation agreement, divorce decree, or property settlement agreement;

4. Actually in the nature of alimony, maintenance or support.

Applying these factors to each of the debtor's obligations, the bankruptcy judge concluded the following:

The debtor's obligations to pay to his ex-wife $1,500 per month for alimony and $350 per child, per month for child support possess the four characteristics and are nondischargeable. Likewise, the obligation to increase these payments by a percentage equal to the percentage in increase in the debtor's annual gross income above $100,000 is nondischargeable. Each of the remaining obligations lacks at least one of the four factors and is dischargeable. Specifically, the obligation to pay $432.69 per month for 12 years, regardless of the wife's remarriage or death, fails the fourth test. The obligations to pay for the ex-wife's law school education, the second mortgage on the house and a bank note secured by the ex-wife's automobile fails the first and fourth tests. The obligations to pay private school costs for the children; to provide medical insurance for the children; to pay dental and orthodontic expenses for the children; to pay college and graduate degree expenses for the children; to make payments on two life insurance policies with the ex-wife and children as beneficiaries; to make payments on disability policies for the benefit of the children; and to pay all remaining loans listed in paragraph 13 of the Findings of Fact each fail the first test. The ex-wife/appellant appeals as error the findings of the bankruptcy judge that certain of the debtor/appellee's obligations were dischargeable under the Bankruptcy Code.

## REVIEW OF BANKRUPTCY COURT'S DECISION

■ Rules of Bankruptcy Procedure provide that on an appeal findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. *See, In Re Maitlen,* 658 F.2d 466, 470 (7th Cir.1981); *In Re Garfinkle,* 672 F.2d 1340, 1344 (11th Cir.1982); *Erspan v. Badgett,* 647 F.2d 550, 554 (5th Cir.1981).

> The test for ... this Court, is not whether a different conclusion from the evidence would be appropriate, but whether there is sufficient evidence in the record to prevent clear error in the trial judge's findings. *Highland Village Bank v. Bardwell,* 610 F.2d 228, 230 (5th Cir. 1980).

*In Re Garfinkle,* at 1344. The "clearly erroneous" standard of review applies to factual findings. *In Re Maitlen,* at 470. "The clearly erroneous rule does not apply, however, to questions of law or to mixed questions of fact and law, and the Referee's findings in these matters cannot be approved without the court's independent determination of the law." *Id,* citing *In Re Werth,* 443 F.Supp. 738, 739 (D.Kan.1977); *See also Matter of Braswell Motor Freight Lines, Inc.,* 630 F.2d 348, 350 (5th Cir. 1980). The construction of the agreement in question is a mixed one of fact and law. The bankruptcy judge's order was primarily based on interpretation of the provisions

in the agreement and application of statutory and case law to those provisions. *In Re Maitlen,* at 470.

■ The central issue in this action is whether each of the obligations contained in the parties' divorce agreement constituted support or alimony payments to the former spouse and children resulting in nondischargeable debts under 11 U.S.C. § 523(a)(5). Division of property pursuant to a dissolution decree is treated as a debt dischargeable in bankruptcy. *In Re Maitlen,* at 478. Section 523(a)(5) represents Congress' resolution of the conflict between the discharge of obligations allowed by the bankruptcy laws and the need to ensure necessary financial support for the divorced spouse and children of the debtor. *In Re: Clarence Oral Calhoun,* 715 F.2d 1103 (6th Cir.1983). To this end, § 523(a)(5) provides that an individual debtor is not discharged from any debt:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) Such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

■ The initial question is whether Section 523(a)(5) requires that obligations be payable *directly* to the former spouse or children to qualify for nondischargeability status. This point was recently addressed by the 6th Circuit which held that payments in the nature of support need not be made directly to the spouse or dependent to be nondischargeable. *In Re Calhoun, supra.* This Court approves the reasoning and holding of the 6th Circuit. Debts payable to third parties can be viewed as maintenance or support obligations under this statute; the crucial issue is the function

the award was intended to serve. *In Re Williams,* 703 F.2d 1055, 1057 (8th Cir. 1983); *In Re Spong,* 661 F.2d 6 (2d Cir. 1981); *Matter of Danneman,* No. 180–0100 (Bcy.S.D.Ga.1980); *Matter of Coil,* 680 F.2d 1170 (7th Cir.1982). It is a well established principle of bankruptcy law that dischargeability must be determined by the substance of the liability rather than its form. *In Re Spong,* at 9. Pertinent legislative history supports this position. *Id.*

The legislative history of this provision makes it clear that the determination of whether a debt is "actually in the nature of alimony, maintenance, or support" is to be made under federal bankruptcy law. H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 363 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 77–79 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. See also Collier on Bankruptcy ¶ 523.15, p. 523–109 (15th Ed.1980). *In Re Lineberry,* 9 B.R. 700, 704 (W.D.Mo.1981); *Matter of Painter,* 21 B.R. 846 (Bcy.M.D.Ga.1982); *Matter of Thompson,* No. 82–5127 (Bcy.M.D.Ga. 1982); *Matter of Stranahan,* 5 C.B.C.2d 640 (1981).

■ While it is clear that Congress intended that federal law not state law should control the determination of when a debt is in the nature of alimony or support, it does not necessarily follow that state law must be ignored completely. *In Re Calhoun, supra.*

The underlying obligation to provide support in the first place is necessarily determined by state law. The federal bankruptcy courts are obviously not empowered to create an obligation to support where it did not previously exist. Moreover, there is "no federal law of domestic relations." *DeSlyva v. Ballentine,* 351 U.S. 570, 580 [76 S.Ct. 974, 980, 100 L.Ed. 1415] (1956). Divorce, alimony, support and maintenance are issues within the exclusive domain of the state courts. *Boddie v. Connecticut,* 401 U.S. 371, 389 [91 S.Ct. 780, 792, 28 L.Ed.2d 113] (1971) (Black, J., dissenting).

*Id.* The point is that bankruptcy courts are not bound by state law where it defines an

item as alimony, maintenance or support, as they are not bound to accept the characterization of an award as support or maintenance which is contained in the decree itself. *In Re Lineberry*, at 704. *See also In Re Tilmon*, 9 B.R. 979, 987 (N.D.Ill. 1981). Before making a determination of whether a debt is actually in the nature of support, however, most bankruptcy courts do take into consideration such factors as the intention of the parties in creating the obligation, the language and substance of the divorce agreement, extrinsic circumstances and applicable state law.[1] See *Matter of Crist*, 632 F.2d 1226, 1229 (5th Cir.1980).

 The Court finds the 6th Circuit's analysis of the dischargeability of the assumption of joint debts to be equally applicable to other obligations created in the divorce agreement. The initial inquiry must be to ascertain whether the state court or the parties to the divorce *intended* to create an obligation to provide support; if they did not, the inquiry ends there. *In Re Calhoun, supra.*

> In making this determination, the bankruptcy court may consider any relevant evidence including those facts utilized by state courts to make a factual determination of intent to create support.

This finding of intent does not, however, control the ultimate issue of whether the assumption of joint debts was actually in the nature of support for purposes of federal bankruptcy. If the bankruptcy court finds, as a threshold matter that assumption of the debts was intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied.... The bankruptcy court should also look to the practical effect of the discharge of each loan upon the dependent spouse's ability to sustain daily needs.... If without the loan assumption the spouse could not maintain the daily necessities, such as food, housing and transportation, the effect of loan assumption may be found "in the nature of" support for purposes of the Bankruptcy Act. (cites omitted).

Having found that the loan assumption has the effect of providing necessary support, the Bankruptcy Court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. Such an excessive allowance is at odds with the fresh start concept underlying federal bankruptcy law.

*Id.* In determining whether obligations are "manifestly unreasonable" the bankruptcy courts may examine the debtor's ability to pay at the time of the creation of the obligation and at the time of the bankruptcy proceeding. *Id. See also In Re Warner*, 5 B.R. 434, 442 (Bcy.D.Utah, 1980); *In Re Harrell*, 13 B.R. 302 (Bcy.N.D.Ga.1981). If, at the time the obligations were created in the agreement, they substantially exceeded the debtor's present and foreseeable ability to pay, the amount of the obligation which exceeded that ability should not be characterized as in the nature of support. *Id.* Likewise, if the circumstances of the

---

1. Applicable state law provides that the following factors shall be considered in determining the amount of alimony, if any, to be awarded:

1) The standard of living established during the marriage;

2) The duration of the marriage;

3) The age and the physical and emotional condition of both parties;

4) The financial resources of each party;

5) Where applicable, the time necessary for either party to acquire sufficient education or training to enable him to find appropriate employment;

6) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party;

7) The condition of the parties, including the separate estate, earning capacity, and fixed liabilities of the parties; and

8) Such other relevant factors as the court deems equitable and proper.

All obligations for permanent alimony, however created, the time for performance of which has not arrived, shall terminate upon remarriage of the party to whom the obligations are owed unless otherwise provided. O.C.G.A. 19–6–5.

debtor have changed from the time the obligation to the former spouse was created so as to make such support now inequitable, the bankruptcy court may consider the debtor's *current* general ability to pay insofar as it relates to the *continuing* obligation to make the payments. *Id.* Factors the bankruptcy court should consider in determining whether an obligation is in the nature of support include such traditional state law factors as the relative earning power of the parties, their financial status, prior work experiences or abilities, other means of support and other facts relevant to the *substance of the result* achieved by the obligation. *Id.*

In this case, the bankruptcy judge determined that direct payments to appellant of $1,500.00 per month until she dies or remarries and $350.00 per child, per month until each child finishes a four year college education were properly characterized as alimony and support and, therefore, nondischargeable in bankruptcy. In addition, the obligation to annually increase these payments, according to an increase in Appellee's annual gross income, having no effect on the underlying character of the debts, was deemed nondischargeable. The Court affirms the bankruptcy court's findings that these obligations fall within the exceptions to discharge outlined in Section 523(a)(5).

Appellee does not dispute that a discharge in bankruptcy does not discharge the debtor from his moral and legal obligation to support his former spouse and children. He maintains, however, that this obligation should be tied to his ability to pay at the time of the bankruptcy proceeding and that alimony and child support payments should be reduced accordingly. The Court agrees that Appellee's current general ability to pay is relevant in making a determination of whether each obligation is actually in the nature of support. However, the bankruptcy court's findings can be set aside by this Court only if clearly erroneous. The findings regarding these alimony and child support obligations are not clearly erroneous and must be affirmed.

Appellee also maintains that the obligation to support his children past the age of their respective majority is dischargeable. Appellee argues that in Georgia there is no moral or legal obligation on the part of a parent to support a child after it reaches majority and that the *contractual obligation* to do so is dischargeable. The Court disagrees. The divorce agreement provides that monthly child support payments shall continue until he/she has completed requirements for a four-year college degree provided that he/she is continuously enrolled in and doing satisfactory work in a college or university and is unmarried. These payments abate during the months that the children actually attend college classes or live away from the residence of their mother, the appellant. The Court agrees with the bankruptcy judge that this obligation is actually in the nature of child support. 11 U.S.C. § 523(a)(5) did not limit the word "child" by prefacing it with the word "minor." Accordingly, "child" as it is used in 11 U.S.C. § 523(a)(5) may include a child of the debtor who has reached the age of majority. *In Re Harrell*, 13 B.R. 302 (Bcy.N.D.Ga.1981).

In affirming the bankruptcy court's determination that the above amounts are alimony, child support or maintenance, the Court is cognizant of the "fresh start" objectives of the Bankruptcy Code, but is of the opinion that the debtor/appellee should not be able to escape his familial obligations by receiving a discharge in bankruptcy. The courts "have been admonished not to presume that Congress intended as a part of its design in enacting the Bankruptcy Act that by relieving the unfortunate debtor, bankruptcy also absolves the husband of his moral and legal obligations of maintenance and support." *Matter of Thompson*, No. 32–5127 (Bcy.M.D.Ga.1982), citing *In Re Smith*, 436 F.Supp. 469, 474 (N.D.Ga.1977).

While the appellee contracted away his right to seek a modification of the alimony payments, it does not appear that he waived his right to seek a modification of

child support payments. The amendment to the Divorce Agreement specifically states that:

> 1. The parties waive their statutory right to future modifications, up or down, of the *alimony payments* provided for in said agreement of August 31, 1980, based upon a change in the income or financial status of either party. (emphasis added).

Nowhere in the Amendment is any provision which refers to the right of modification of child support payments. See *Beard v. Beard,* 250 Ga. 449, 298 S.E.2d 495 (1983). Moreover, since the right to petition for modification of child support is a right which belongs to the children involved and not to the mother, she cannot waive it. *Crosby v. Crosby,* 249 Ga. 569, 292 S.E.2d 814 (1982). Thus, even if the agreement can be said by its terms to have waived the right to seek a revision of the child support payments awarded under the divorce decree, it was not effective for that purpose. *Id.* Appellee's remedy was to have proceeded back to state court to obtain a modification of the child support provisions. *In Re Lineberry,* at 707.

All remaining obligations in the divorce agreement were deemed dischargeable in the bankruptcy proceedings. The Court affirms the findings of dischargeability as to obligations to pay the additional sum of $432.69 per month for 12 years; the second mortgage on the former marital home; the bank note secured by appellant's automobile; and appellant's law school expenses. The Court remands for further proceedings the findings regarding the remaining liabilities.

The Bankruptcy Court found that appellee's obligation to pay to appellant additional "alimony" of $432.69 per month for 12 years, regardless of her remarriage or death was not actually in the nature of support and, therefore, dischargeable. It is undisputed that this sum was intended to cover the monthly first mortgage payments due on the parties' former marital home. Under the terms of the agreement, this property was transferred to appellant sub-

ject to the first mortgage. Obligations to make mortgage payments have been held to constitute support for purposes of section 523(a)(5). *See In Re Maitlen, supra; In Re Smith,* at 478. However, this Court's responsibility goes beyond ascertaining the purpose of a payment. *Matter of Stranahan,* at 645. The Court must determine whether the language of the agreement, extrinsic circumstances existing at the time of execution of the agreement, intent of the parties and applicable state law support a finding that this mortgage payment liability was in the nature of support.

The appellation assigned to the payments is not determinative of the issue. *In Re Ingram,* 5 B.R. 232, 234 (Bkrtcy.N.D.Ga. 1980); *In Re Lineberry,* at 704. Thus, the designation of the additional $432.69 per month as "alimony" in the divorce agreement does not end the Court's inquiry into the nature of this liability. It is the basis for creation of the obligation which determines whether it was intended as an equalization of property rights or as support and maintenance. *In Re Tilmon,* 9 B.R. 979, 988 (N.D.Ill.1981). This Court must look behind the agreement and the decree to determine the essential nature and character of the liability for purposes of determining the issue of dischargeability of debt. *Id.*

The obligation to make the payments was to continue upon appellant's remarriage and become a debt to her estate should she die before the expiration of the 12 years. This continuation of payments after her need for support terminates is an indication that the obligation is a division of property rather than support. *In Re Maitlen,* at 469; *In Re Ingram,* at 235. In addition, at the time the agreement was executed, it was the parties' understanding that appellant and the children would be moving to Athens, Georgia to enable appellant to pursue a three-year legal education and would not be living in the Savannah home on a full-time basis. In fact, following appellant's first year in law school, the home was rented to a third party for an

amount in excess of the monthly mortgage payment. Based on the foregoing facts, the Court cannot set aside the bankruptcy court's holding as clearly erroneous.

■ Appellee's assumption of the second mortgage on the home was considered a division of property and dischargeable in bankruptcy. For many of the same reasons set forth in the previous paragraphs, the Court affirms. An additional indication that this assumption is a property division is the location of the provision creating the obligation in the divorce agreement. See *In Re Maitlen*, at 469. It is contained in the paragraph in which title to the home is transferred to appellant. This paragraph is part of the asset division portion of the agreement.

■ The bankruptcy court's determinations of dischargeability of appellee's assumption of the bank note secured by appellant's car and payment of appellant's law school expenses are not clearly erroneous. Appellant failed to carry her burden of proving that these obligations were actually in the nature of support or in lieu of additional support. See *Matter of Coil*, 680 F.2d 1170 (7th Cir.1982).

■ The remaining obligations in the divorce agreement were held to be dischargeable by the bankruptcy court solely because payments pursuant to these obligations were not made directly to appellant or the children. The underlying nature of the liabilities was not addressed. As previously discussed, this is an incorrect interpretation of Section 523(a)(5). Whether the obligations are in fact for "support" and therefore not dischargeable in bankruptcy, is the question of fact to be decided by the bankruptcy court as trier of fact in light of all the facts and circumstances relevant to the intention of the parties. *In Re Williams*, 703 F.2d 1055, 1057–8 (8th Cir.1983). Accordingly, the judgment of the Bankruptcy Court regarding these remaining obligations must be reversed and the case remanded for further proceedings.

In summary, the Bankruptcy Court's findings of nondischargeability as to monthly alimony payments of $1,500.00 and monthly child support payments of $350.00 per child along with appropriate annual percentage increases of such payments are affirmed. Findings of dischargeability of the additional monthly sum of $432.69, the second mortgage on the house, the bank note secured by appellant's automobile and appellant's law school expenses are affirmed. Findings on all remaining obligations were based on an incorrect interpretation of § 523(a)(5) and the case must be remanded to the Bankruptcy Court for additional findings of fact consistent with the standards set forth in this opinion.