PER CURIAM.
 

 This appeal concerns the interpretation of a portion of a decree dissolving a marriage in Indiana. The District Court concluded that an obligation to pay mortgage payments incorporated into the property settlement agreement was non-dischargeable in bankruptcy. We note jurisdiction under 28 U.S.C. § 1291 and affirm.
 

 Dennis and Joyce Maitlen, bankrupt and plaintiff in an adversary proceeding in the Bankruptcy Court, when husband and wife, entered into a “Property Settlement Agreement” which was incorporated into a “Decree of Dissolution” of their marriage on November 20, 1974. Paragraph 3 of the agreement provides that the wife would have custody of the minor child, that Dennis Maitlen (Maitlen) would pay $40 every other Friday for support of the child and would pay all reasonable and necessary medical and dental expenses. Paragraph 4 provides:
 

 The Wife should become the sole owner of the real estate of the parties .... The Husband shall pay and satisfy the mortgage upon said real estate in favor of Waterfield Mortgage Company ... by making the monthly payments thereon as the same become due, which monthly payments include principal, interest, taxes and insurance, all of which shall be paid by the Husband. The obligation of the Husband to make said mortgage payments and to satisfy said mortgage in- ■ debtedness shall terminate upon the death or remarriage of the Wife prior to payment of said indebtedness in full.
 

 On March 22, 1979, Maitlen filed for bankruptcy. After proceedings on the question of the dischargeability of this mortgage payment obligation, the Bankruptcy Judge entered an order determining that the obligation was dischargeable. Joyce Maitlen appealed to the District Court and that court reversed.
 

 There is no dispute that if an obligation is a debt for alimony, maintenance, or support of a spouse or child in connection with a divorce decree, it is not dischargea-ble in bankruptcy. 11 U.S.C. § 523(a)(5).
 
 In re Woods,
 
 561 F.2d 27 (7th Cir. 1977). Maitlen here argues that the debt is not one of child or spousal support. In fortifying this position, he points to the explicit provision for child support, to the fact that the agreement was a “Property Settlement,” and to a paragraph of the agreement which releases the husband from any obligation of support for the wife. Finally, he argues that the debt was one of property equalization, not support. Joyce Maitlen responds, arguing that the debt is in the nature of support. She emphasizes the reasoning and conclusions of the District Court in her argument.
 

 This court has recently considered the issue of dischargeability of a debt arising out of an Indiana dissolution decree and settlement.
 
 In re Woods. Woods
 
 enunciates principles for guidance in the interpretation of such agreements. Although certain of Indiana’s substantive laws have been amended since the
 
 Woods
 
 facts developed, we believe the principles announced there are still valid.
 

 This case turns on the interpretation of paragraph 4 of the Maitlens’ “Property Settlement Agreement.” After careful review, we conclude that the District Court has properly interpreted the agreement and correctly applied the law under
 
 Woods.
 
 We, therefore, affirm the decision of the District Court for the reasons set forth in its opinion, which we attach as Appendix A.
 

 AFFIRMED.
 

 APPENDIX A
 

 IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA HAMMOND DIVISION AT LAFAYETTE
 

 
 *468
 
 In Re Dennis Neil Maitlen,
 
 Bankrupt,
 
 Joyce A. Maitlen,
 
 Plaintiff/Appellant, v.
 
 Dennis Neil Maitlen
 
 Defendant/Appellee.
 

 Bankruptcy No. LB 79-117 Civil No. L 80-42
 

 MEMORANDUM OF DECISION AND JUDGMENT ORDER
 

 This cause is before the court on appeal from an order of the Bankruptcy Judge entered in this case on July 7,1980. Appeal was taken pursuant to Rules of Bankruptcy Procedure, Rule 801, et seq. Notice of Appeal was filed on July 14, 1980, and an agreed summary of the evidence was filed in July 18,1980. Appellant-plaintiff filed a brief on August 19, 1980. Appellee-defend-ant-bankrupt filed a brief on August 27, 1980, and appellant-plaintiff filed a reply brief on September 8, 1980. For the reasons set forth below, the order of the Bankruptcy Judge will be reversed.
 

 Plaintiff is the former wife of defendant. On November 20,1974, a Decree of Dissolution incorporating a written Property Settlement Agreement between plaintiff and defendant was entered in Tippecanoe Superior Court, Tippecanoe County, Indiana. Both the decree and the agreement have been made part of the record on this appeal. As part of that agreement, the plaintiff became sole owner of what had been the family residence and the defendant agreed to make the monthly mortgage payments. On March 22, 1979, the defendant in this action filed a Petition for Voluntary Bankruptcy. On December 3, 1979, the plaintiff filed a complaint to determine whether the defendant’s obligation to make mortgage payments was dischargeable in bankruptcy. A hearing before the Bankruptcy Judge was neld on June 13, 1980, and on July 7, 1980 the Bankruptcy Court entered an order determining that the obligation to make mortgage payments was dischargeable in bankruptcy. That order is the subject of this appeal.
 

 Division of property pursuant to a dissolution decree is treated as a debt discharge-able in bankruptcy proceedings. However, a provision for alimony or support is not dischargeable.
 
 See
 
 11 U.S.C. § 523(a)(5) and its predecessor, former 11 U.S.C. § 35(a). The question in this case is whether the obligation to make mortgage payments was a support obligation or a property division. Since the dissolution in question occurred in 1974, it was pursuant to Ind.Code § 31-1-11.5-9, which became effective in 1973. That section eliminated the use of the word “alimony.” Much Indiana case law on this question was decided under the prior statute; the decisions revealed a dichotomy as to the meaning of the term “alimony.”
 
 See
 
 the discussion in
 
 Nichols v. Hensler,
 
 528 F.2d 304, 307-08 (7th Cir. 1976). However, in determining whether an obligation is a liability for support, the court must look to the substance of the obligation and not to labels imposed by state law.
 
 Shacter v. Shacter,
 
 467 F.Supp. 64 (D.Md.),
 
 aff’d,
 
 610 F.2d 813 (4th Cir. 1979). Indiana decisions under prior statutes can still be considered for the distinctions they drew between property division and support, without regard to use of the term “alimony.” Under the current Indiana statute, what was formerly termed alimony must be classified as either property distribution or maintenance.
 
 See Johnson v. Johnson,
 
 367 N.E.2d 1147 (Ind.App.1977). The United States Court of Appeals for the Seventh Circuit in
 
 In re Woods,
 
 561 F.2d 27 (7th Cir. 1977), made a thorough consideration of Indiana law under the prior Indiana statute on the question of what distinguishes a property division from a support obligation. Since the prior Indiana decisions remain valid in regard to this question,
 
 In re Woods
 
 provides the guidelines for the court in this case.
 

 The obligation to make mortgage payments appears in paragraph 4 of what is
 
 *469
 
 styled a “Property Settlement Agreement” entered into by and between plaintiff and defendant on September 11, 1974. However, the use of such a term is “not disposi-tive.”
 
 In re Woods,
 
 561 F.2d at 29. It is apparent that the agreement in question did not concern itself solely with the division of property, despite the terms by which the agreement was identified. Paragraph 3 of the agreement provides that the husband will provide the wife a specified periodic sum for child support.
 

 The obligation in question in
 
 Woods
 
 was the husband’s obligation to pay various consumer debts owed to banks, a finance company, and retail and department stores.
 
 See
 
 561 F.2d at 29. The court found the obligation to be in the nature of a property division. One factor indicating that the obligation was a division of property was the location of the provision creating the obligation “in the midst of provisions allocating property” in the pertinent separation agreement. 561 F.2d at 30. In this case, however, paragraph 4, creating the obligation to make mortgage payments, immediately follows paragraph 3, creating the obligation to make child support payments.
 

 Another factor in
 
 Woods
 
 indicating that the obligation was a property division was that there were no children whose support was in question. See 561 F.2d at 30. In this case, however, one child was involved. At the hearing before the Bankruptcy Judge, defendant testified that he “did not consider the [mortgage] payment to be support, but that he did undertake the payment of the mortgage on the house he transferred to his ex-wife until her death or remarriage in order to provide a home for his former wife and daughter.” Agreed Summary of the Evidence, filed July 18, 1980.
 

 Another factor in
 
 Woods
 
 indicating that the obligation was a property division was that “there is no indication that this term was intended to balance the relative income of the parties.” 561 F.2d at 30. However, paragraph 1 of the agreement in this case stated, “Each of said parties is fully and completely informed of the financial and personal status of the other and each of the parties has given full and mature thought to the making of this Agreement, and all of the obligations contained therein .... ” According to plaintiff’s brief filed August 19, 1980, in 1974, the husband’s annual income was approximately $12,000 while the wife was not employed outside the home. Paragraph 1 of the agreement suggests that the husband agreed to make the mortgage payments on the house occupied by his wife and child because of the difference in income of the two parties.
 

 The court in
 
 Woods
 
 noted that, “Indiana cases considering an award as support invariably involve payment of money ... directly to the spouse to be supported.” 561 F.2d at 30. Under the agreement in that case, the husband agreed to pay the creditors directly. The court concluded that, “The obligation to pay bills incurred during the marriage assumed by [the Husband] benefits [the wife] too tenuously and indirectly to have been undertaken for her future support.” 561 F.2d at 30. However, the past debts owed to stores such as Sears, Roebuck Co., which were assumed by the husband in
 
 Woods
 
 must be distinguished from an agreement to make mortgage payments falling due each month after the dissolution. It cannot be said that plaintiff in this case benefitted only tenuously and indirectly from the agreement to make each mortgage payment as it fell due for the house in which the wife and child but not the husband were to reside.
 

 The obligation in this case further differs from the obligation in
 
 Woods
 
 in that the agreement in
 
 Woods
 
 said nothing about termination of the husband’s obligation to pay the debts. In contrast, paragraph 4 of the agreement in this case stated: “The obligation of the Husband to make said mortgage payments and to satisfy said mortgage indebtedness shall terminate upon the death or remarriage of the Wife prior to payment of said indebtedness in full.” Termination of an obligation of the husband upon death or remarriage of the wife is an indication that the obligation is support rather than a division of property.
 
 See Stanford v.
 
 Stan
 
 *470
 

 ford,
 
 352 N.E.2d 93, 94-95 (Ind.App.1976);
 
 White v. White,
 
 338 N.E.2d 749, 754-55 (Ind.App.1975). For decisions in other jurisdictions on the question whether an obligation to make mortgage payments is support or a property division, and on the significance of termination of the obligation on death or remarriage of a spouse,
 
 see Stein v. Fellerman,
 
 144 N.J.Super. 444, 365 A.2d 1382 (1976);
 
 Treece v. Treece,
 
 458 P.2d 633 (Okl.1969);
 
 Henson v. Henson,
 
 366 S.W.2d 1 (Mo.App.1963).
 
 See generally
 
 Annot.,
 
 Obligation under Property Settlement Agreement between Spouses as dischargeable in Bankruptcy,
 
 74 ALR2d 758 (1960); Note, Dissolution of Marriage and the Bankruptcy Act of 1973: “Fresh Start” Forgotten, 52 Ind.L.J. 469, 482 (1977).
 

 That paragraph 3 of the agreement in question provides that the husband will pay child support in certain amounts does not preclude the possibility that the mortgage payments provided in paragraph 4 would constitute support to the child or to the wife. It is true that paragraph 13 of that agreement states: “The Wife does hereby release the Husband of all obligations for support of herself by the Husband and from all rights and claims arising by reason of the marriage, including any inchoate interest which she may have .... ” However, this paragraph releases the husband only from obligations other than those provided in other paragraphs of the agreement. This paragraph does not determine the character of obligations created in other paragraphs of the agreement.
 

 It is also true that the agreement in question was drafted by the wife’s attorney; the husband was not represented by a lawyer in the dissolution proceeding. “The provisions of a property settlement agreement are governed by the law of contracts.”
 
 Goggans v. Osborn,
 
 237 F.2d 186, 189 (9th Cir. 1956). It is axiomatic that a contract will be construed against the party that drafted it. However, it is not clear that this maxim is even applicable to an issue not related to the performance of the contract. This court will not apply the maxim to a ouestion of the significance of certain provisions if an unforeseen contingency such as bankruptcy occurred many years after the drafting of the agreement.
 

 Rules of Bankruptcy Procedure, Rule 810 provides that upon an appeal the district court “shall accept the referee’s findings of fact unless they are clearly erroneous, and shall give due regard to the opportunity of the referee to judge the credibility of the witnesses.” The “clearly erroneous” standard of review applies to factual findings.
 
 See In re Solomon,
 
 506 F.2d 463, 464 (7th Cir. 1974);
 
 In re Northern Illinois Development Corp.,
 
 324 F.2d 104, 106 (7th Cir. 1963). “The clearly erroneous rule does not apply, however, to questions of law or to mixed questions of fact and law, and the Referee’s findings in these matters cannot be approved without the Court’s independent determination of the law.”
 
 In re Werth,
 
 443 F.Supp. 738, 739 (D.Kan.1977).
 
 See also Stafos v. Jarvis,
 
 477 F.2d 369 (10th Cir.),
 
 cert. denied,
 
 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973);
 
 Minnick v. Lafayette Loan & Trust Co.,
 
 392 F.2d 973 (7th Cir.),
 
 cert. denied,
 
 393 U.S. 875, 89 S.Ct. 170, 21 L.Ed.2d 146 (1968);
 
 In re American Beef Packers, Inc.,
 
 457 F.Supp. 313 (D.Neb.1978). The construction of the agreement in question is either a question of law or a mixed question of fact and law. The order entered July 7, 1980, was primarily based on interpretation of the provision for mortgage payments and application of statutory and case law to that provision.
 

 The order of July 7, 1980, was clearly incorrect in its application of an Indiana statute. That order stated:
 

 The provision in the decree which “ordered” the parties to perform the agreement appears to have amounted to nothing more than approving it. The decree does not contain anything to show that the court awarded support for the wife. In fact, the court could not have awarded her support after the dissolution without first finding, pursuant to an Indiana statute, that she was physically or mentally incapable of supporting herself.
 

 The reference is to
 
 Ind.Code
 
 31-l-11.5-9(c), dealing with final decrees of dissolution. That section states:
 

 
 *471
 
 (c) The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court.
 

 It is correct that the decree entered by the Tippecanoe Superior Court on November 20,1974, contained no finding of incapacity. However, no such finding is necessary when an award of maintenance is based upon agreement of the parties.
 
 Ind.Gode
 
 31-1-11.5 — 10 provides in pertinent part:
 

 Agreements. — (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for the maintenance of either of them, the disposition of any property owned by either or both of them and the custody and support of their children.
 

 (b) In an action for dissolution of the marriage the terms of the agreement if approved by the court shall be incorporated and merged into the decree and the parties ordered to perform them, or the court may make provisions for disposition of property, child support, maintenance, and custody as provided in this chapter. ...
 

 Since the decree in this case was based on an agreement, the absence of a finding of incapacity does not indicate that the agreement as incorporated into the decree could not provide for maintenance or support for the wife.
 

 This court, however, does not base its reversal of the order entered July 7, 1980 primarily on the incorrect reference in that order to the Indiana statute. Rather, for all the reasons set forth above, that order is incorrect in its general construction of the agreement in question and in its application of statutory and case law to that agreement.