**In re Peter Frank SHAVER, Debtor.**

**Nancy H. SHAVER, Plaintiff,**

**v.**

**Peter F. SHAVER, Defendant.**

**Bankruptcy No. 82–157.**

**Adv. No. 82–157.**

United States Bankruptcy Court, D. Nevada.

Feb. 8, 1983.

---

David E. Wickland, Munster, Ind., for plaintiff.

Alan R. Smith, Reno, Nev., for defendant.

## OPINION

SAMUEL J. STEINER, Bankruptcy Judge.

## FACTS

Plaintiff ("wife") commenced this action seeking a determination of the dischargeability of a $197,300 debt owed to her by the debtor-defendant (her ex-husband).

On June 27, 1979, the Indiana Superior Court after a lengthy trial entered a decree dissolving the marriage. The decree provided, *inter alia,* for custody of the parties' four children, that the debtor was to pay the plaintiff child support of $1,500 per month, and that "in final settlement of the property rights of the parties and division of marital assets, [the wife] shall receive from [the husband] the sum of ... $150,-000, payable over a [seventy-five month] period [at the rate of $2,000 per month]." The decree was amended on December 31, 1979, to provide that "as and for [the wife's] discharge of her marital and dower rights arising from the marriage, [she] shall be paid the sum of $197,300 in periodic payments...." The payments were to stretch out over a period in excess of ten years, but would cease if the wife were to die prior to full payment.

Unlike the initial decree, the amended decree arose out of the parties' negotiations and stipulation. Mr. Benne, the wife's attorney in the divorce case, testified that the parties intended the periodic payments to constitute alimony which, if properly structured, would be deductible by the husband (and, conversely, would be income to the wife). Mr. Benne explained the difference between the judge's original $150,000 figure and the parties' agreed $197,300 figure as representing the amount of taxes the wife would have to pay on the alimony received. In addition, Mr. Benne testified that the monthly payments were reduced from $2,000 per month to $1,500 per month to establish an amount the debtor "could live with." The debtor testified that alimony was never discussed with him and that he never would have agreed to pay alimony.

Subsequent to the divorce, the debtor filed his bankruptcy. The plaintiff asserts that the debt is in the nature of alimony and is not dischargeable in bankruptcy. On the other hand, the debtor contends that the debt established by the agreed judgment was a property settlement and is dischargeable in bankruptcy.

## ISSUE

What is the true nature of the $197,300 obligation: alimony or property division?

## DISCUSSION

Section 523(a)(5) of the Code provides that "a discharge under section 727 ... does not discharge an individual debtor from any debt ... to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a ... divorce decree, or property settlement agreement 11 U.S.C. § 523(a)(5). The legislative history indicates that federal bankruptcy law, not state law, controls. Thus, the bankruptcy court has a duty to look beyond labels used by state courts. *In re Vickers,* 24 B.R. 112 (Bkrtcy.D.Tenn.1982).

In the instant case, Indiana law with certain exceptions forbids the court from awarding maintenance or alimony. Indiana Code § 31–1–11.5–9(c). Despite the prohibition, Indiana law does not prohibit spouses from agreeing to alimony. Indiana Code § 31–1–11.5–10(a). *See Hicks v. Fielman,* Ind.App., 421 N.E.2d 716, 720 (1981). Although Indiana law is not dispositive, it is significant and a starting point.

Bankruptcy Courts have enunciated a number of factors pertinent to whether a judgment is alimony or property division. Judge Goldwater's opinion in *In re Stachowiak,* 16 B.R. 392 (Bkrtcy.D.Nev.1982), cited by the debtor, identified the following factors: whether the debt involved a "stream of payment" terminating on the

death or remarriage of the recipient (or on the death of the payor spouse) and/or whether the arrangement "appears related or intended for the economic safety and future of the wife." *Id.* at 393. The Seventh Circuit, in *In re Maitlen,* 658 F.2d 466 (7th Cir.1981), interpreted a document entitled "Property Settlement Agreement" (incorporated into a dissolution decree) and concluded that a provision requiring the husband to make the mortgage payments on the house awarded to the wife created a nondischargeable obligation. The court identified many factors: the location of the provision in the agreement or decree; whether children were involved; whether the obligation was designed to balance the parties' disparate income (the court found such intent by a recital in the agreement that each party was aware of the financial and personal status of the other); whether the award involved the payment of money; whether the award provided for payment directly to the spouse; whether the award involved payment of future, as opposed to past, debts; and whether the provision dealt with termination of the payment (the court noted that termination upon the recipient's death or remarriage indicates support rather than property division). In *Maitlen,* the debtor contended (as in the case at bar) that the award could not be in the nature of alimony because Indiana law prohibited such an award absent a finding of incapacity. *Id.* at 470. The court rejected this argument, holding that the parties could and did agree to a maintenance award. *Id.* at 471. (Presumably the court would come to the same conclusion under the Code for a different reason—the legislative history says state law does not control). The court did not deem it dispositive that the parties failed to label the provision "maintenance" or "alimony" or that the husband did not consider the debt to be support for the wife. *See also In re Woods,* 561 F.2d 27 (7th Cir.1977) (husband's assumption of prior debts and hold harmless agreement dischargeable where debts owed to creditors, not wife, provision situated between other property division provisions, no real disparate income between parties,

no children involved, and no provision for payment, *i.e.,* in gross or periodic, made).

The Ninth Circuit, in *Matter of Albin,* 591 F.2d 94 (9th Cir.1979), held that an agreement requiring the husband to make "alimony and support" payments to his wife and children created a nondischargeable debt despite the bankruptcy court's determination that the debt constituted a dischargeable property settlement. The court identified five factors: "(1) whether the obligation terminates on the death or remarriage of the recipient spouse, (2) whether the obligation terminates on the death of the donor spouse, (3) if the payments are payable in installments over a substantial period of time … (4) whether the obligation is enforceable by contempt, … and (5) whether the payments were intended for the economic safety of the wife." *Id.* at 97 (citations omitted). (The court looked to state law—Virginia—and relied on *In re Waller,* 494 F.2d 447 (6th Cir.1974), a case specifically overruled in the legislative history to § 523(a)(5).) The court held the debt nondischargeable "notwithstanding the fact that [the husband's] obligations were not subject to modification and would not terminate on the remarriage of the [wife]." *Id.* at 97.

A recent "Code" case has enunciated eleven factors relevant to whether an obligation is alimony, support, or maintenance:

1. Whether the obligations of payment terminate upon the death of either spouse or upon the marriage of the spouse benefitted by the payments;

2. Whether the obligation terminates when the dependent children reach majority or are otherwise emancipated;

3. Whether the payments are made directly to the spouse;

4. The relative earnings of the parties;

5. Evidence that the spouse relinquished rights and support in return for the payment of the obligations;

6. The length of the parties' marriage and the number of dependent children;

7. The document itself and any inferences which could be drawn and the place-

ment of specific provisions in the document;

8. Whether the debt was incurred for the immediate living expense of the spouse;

9. Whether the payments were intended for the economic safety of the dependent;

10. Whether the obligation is enforceable by contempt;

11. Whether payments are payable in installments over a substantial period of time.

*In re Vickers,* 24 B.R. 112, 114–115 (Bkrtcy. M.D.Tenn.1982). Although some of the considerations outlined above speak solely to the child support issue, many of the factors delineated in *Vickers, Maitlin,* and *Albers* provide a guideline to whether the obligation in the instance case constitutes maintenance/alimony or property division.

Applying the criteria discussed in the cited authorities compels the court to conclude in this case that the $197,300 judgment was alimony. To begin with, the label of the provision "discharge of marital and dower rights" is not controlling. Substance must prevail over form. Further, the obligation is a money judgment payable in cash installments to the wife over a substantial period of time. Third, the debt terminates on the wife's death. It is difficult to imagine a true property division terminating on the death of one of the spouses. In addition, the evidence establishes that the result of the agreed order was to enable the debtor to deduct the periodic payments. Even if one assumes that the debt was restructured primarily for the debtor's tax advantage, it is difficult to understand how he can use it as alimony for tax purposes when he gets a divorce, but can call it property division for dischargeability purposes.

## CONCLUSION

The $197,300 judgment represents alimony and is nondischargeable in bankruptcy.

Pursuant to Bankruptcy Rule 752(a), this opinion shall serve as the Court's Findings of Fact and Conclusions of Law.