**In re James Richard HEGERTY, Debtor.**

**Marylee NAY, Plaintiff,**

v.

**James Richard HEGERTY, Defendant.**

**Bankruptcy No. 97–3399–RLB–7.
Adversary No. 97–269.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

May 28, 1998.

Thomas D. Strodtman, Bamberger & Feibleman, Indianapolis, IN, for plaintiff.

Thomas G. Bradburn, Cohen & Malad, Indianapolis, IN, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ENTRY ON COMPLAINT TO DETERMINE DISCHARGEABILITY

ROBERT L. BAYT, Bankruptcy Judge.

This matter is before the Court on the Objection to Discharge of Debtor ("Complaint"), filed by Marylee Nay on July 7, 1997. A trial on the Complaint was held on April 30, 1998. The Court, based on the matters presented at the April 30, 1998 trial, and pursuant to Federal Rule of Civil Procedure 52 and Bankruptcy Rule 7052, now makes its

### Findings of Fact

1. James Richard Hegerty (the "Debtor") filed a petition under Chapter 7 on March 28, 1997.

2. The Debtor and Marylee Nay (the "Creditor") were married in 1984. Their marriage was dissolved by a Virginia Court (the "Dissolution Court") on February 27, 1996. Prior to the dissolution, on November 9, 1995, the parties entered into an agreement to divide their assets and liabilities (the "Settlement Agreement"), which agreement provided as follows:

-Debtor to pay a "lump sum alimony settlement" in the amount of $50,000, payable $1,000 per month (the "Lump Sum Debt");

-Debtor to pay $3,300 a month for six months, from October of 1995 to March of 1996 (the "Six Month Debt");

-Debtor to pay Creditor $7,064.89, representing all of the monies in the Debtor's 401(K) plan as of the date of the divorce;

-Marital residence to be sold, Creditor to make mortgage payment for 6 months, parties to share payment thereafter, Debtor to pay costs of sale and any amount necessary to cover negative equity (the "Marital Residence Debt");

-Creditor deemed sole owner of tanning salon (the "Tanning Salon"), and to be responsible for all debts in connection therewith;

-Debtor to pay $13,000 personal loan owed to Carol Waugh, Russell Andrews, and Tot Andrews;

-Debtor to pay $723 to Creditor for student loan and credit card payments Debtor failed to make in 1995;

-Debtor to give Creditor 40,000 frequent flier miles;

-Creditor to pay her personal credit card debts and student loan debt; Debtor to pay any remaining joint debt and all separate debt solely in his name

-Creditor deemed sole owner of VEPCO stock;

-Creditor to receive 1994 tax refunds in the amount of $14,685.00 and $1,884.00; [1]

-Creditor deemed sole owner of 1987 Chevrolet, and leased Honda, and to be responsible for debts on both, Debtor deemed

---

1. The federal income tax refund check for 1994 was projected by the parties to be $14,685. The actual check the Internal Revenue Service issued was in the amount of $18,461.68. Pursuant to the parties' agreement, the Creditor received the entire $18,461.48 check.

The Internal Revenue Service has since informed the Debtor that the $18,461.68 check included a $3,113.67 overpayment. The Debtor has agreed to pay the amount due for the overpayment. *See* Defendant's Exhibit 4.

sole owner of 1990 Mazda, and to be responsible for debt thereon;

-Personal property to be split as agreed;

-Each party to pay his or her own attorney fees and costs associated with the dissolution.

3. The language of the Settlement Agreement provides as follows with respect to the Lump Sum Debt, and the Six Month Debt:

20. c. Jim agrees to pay as a lump sum alimony settlement to Marylee, or, if deceased, her estate, which shall NOT be tax deductible by him or taxable as income to her the sum of Fifty Thousand Dollars ($50,000) payable in One Thousand Dollar per month consecutive installments commencing on March 15, 1996 and to continue until paid regardless of the marital status of either party and shall be due and owing as a debt against Jim' [sic] estate if he dies before payment is completed. Commencing on the 15th day of October, 1995, and continuing on the 15th day of each month thereafter, regardless of either party's marital status until March 14, 1996, Jim shall pay to Marylee the sum of $3,300 per month spousal support, which shall be taxable to her and deductible by him.

Plaintiff's Exhibit B, paragraph 18.

4. The language of the Settlement Agreement specifies that the Marital Residence Debt is in the nature of support, and is non-dischargeable in bankruptcy:

18. The parties acknowledge that they are the joint owners of certain improved real property.... The parties shall immediately list the marital home for sale.... Jim shall be solely liable for all costs of sale ... for paying off the remaining balance of the mortgage ... [for] any outstanding real estate taxes....

The aforesaid obligations have been assumed by Jim in consideration of Marylee's agreement to receive support less than that ordered, *pendente lite*, by the Fairfax Circuit Court. *These obligations are in the nature of support and are not intended by either party to be dischargeable or deferrable in any bankruptcy.*

Plaintiff's Exhibit B, paragraph 18 (emphasis added).

5. At the time of the dissolution, the Debtor was employed by Diamond Technology. The Creditor worked as the owner/manager of the Tanning Salon, but because the business was just getting started, cleared no money from the business after payment of expenses.

6. In May of 1996, a payroll withholding order was entered in the Dissolution Court, which provided that $1,000 per month would be withheld from the Debtor's pay by the Debtor's employer, Diamond Technology Partners, Inc. ("Diamond Technology"). *See* Plaintiff's D. The $1,000 per month was intended to satisfy the Debtor's Lump Sum Debt obligation.

7. In November of 1996, the Debtor's daughter Caroline Jacqueline Shouraboura–Hegerty ("Caroline") was born. Immediately prior to the birth, the Debtor and Caroline's mother, Nadia Shouraboura ("Ms. Shouraboura") entered into a joint child support agreement and visitation agreement (the "Child Support Agreement"). *See* Plaintiff's Exhibit E. The Child Support Agreement provides as follows:

-monthly child support in the amount of $3,650, paid directly to Ms. Shouraboura;

-an "education fund" payment of $1,763 per month, to Caroline, as repayment of loans by Ms. Shouraboura to the Debtor totaling $36,350;

-a transfer of 2,000 shares of Diamond Technology stock, and 15,000 stock options, to Caroline

8. On December 18, 1998, a Marion County, Indiana court entered a child support order with respect to Caroline (the "Child Support Order"), which order adopted by reference the terms set out in the Child Support Agreement. *See* Plaintiff's Exhibit F.

9. The Debtor reported $150,774 of income on his 1997 federal income tax return. *See* Defendant's Exhibit 3. The Debtor's amended Schedule I reflects that the Debtor's gross monthly income is currently $12,500. The Debtor's net monthly take home pay is $7,393.72. The Debtor's monthly expenses total $7,863.00 (including $5,413 for

child support), leaving a shortfall of approximately $470 per month.

10. On the Schedule J that the Debtor filed with his petition, he listed, *inter alia,* the following expenses:

- laundry and dry cleaning — $150
- transportation (not including car payment) — $250
- hotel expenses — $150

11. The Creditor testified that she currently earns approximately $25,000 a year, and works in a law office. She is married, and has no children. The Creditor is retired from the Coast Guard, and receives a small disability payment from the Coast Guard.

Based on the foregoing Findings of Fact, the Court makes its

### Conclusions of Law

1. The Court has jurisdiction to decide this matter. 28 U.S.C. Section 1334, 28 U.S.C. Section 157.

2. The Lump Sum Debt is the sole remaining marital debt that is in issue between the parties.[2] The Creditor alleges that the Lump Sum Debt is in the nature of support, and is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(5). The Creditor further alleges that if the Lump Sum Debt is not in the nature of support, *i.e.,* if the Lump Sum Debt is in the nature of a property settlement, then it is non-dischargeable pursuant to 11 U.S.C. Section 523(a)(15).

### Dischargeability Pursuant to 11 U.S.C. Section 523(a)(5)

■■■ 3. 11 U.S.C. Section 523(a)(5) provides as follows:

(a) A discharge ... does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child ... but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in

the nature of alimony, maintenance, or support.

If an obligation to a former spouse is in the nature of alimony, maintenance, or support, Section 523(a)(5) renders it non-dischargeable in bankruptcy. If a marital obligation is in the nature of a property settlement, Section 523(a)(5) does not apply to render it non-dischargeable.

■■■ 4. The issue of what constitutes support is a question to be resolved by federal law. *In re Hoivik,* 79 B.R. 401 (Bankr. W.D.Wis.1987), *citing In re Maitlen,* 658 F.2d 466 (7th Cir.1981). The burden of proof under Section 523(a)(5) is on the party objecting to the discharge of the obligation. *Hoivik.*

■■■ 5. "[I]n determining whether an obligation memorialized in a divorce decree is dischargeable, the bankruptcy court must attempt to effectuate the parties' or the divorce court's intent." *Matter of Coil,* 680 F.2d 1170, 1172 (7th Cir.1982). The Court looks to the substance of the marital obligation, and not to the labels used by the parties or state court. *In re Maitlen,* 658 F.2d 466 (7th Cir.1981). In *Matter of Woods,* 561 F.2d 27 (7th Cir.1977), the Seventh Circuit set out several factors to consider in determining whether a marital obligation is in the nature of alimony or a property settlement:

(1) whether the settlement agreement includes provision for payments to the ex-spouse;

(2) whether there is any indication that the [award to the obligee spouse] was intended to balance the relative income of the parties;

(3) whether the [award to the obligee spouse] is in the midst of provisions allocating property; and

(4) whether the [award to the obligee spouse] describes the character and method of payment.

*Matter of Coil,* 680 F.2d 1170, 1172 (7th Cir.1982)(describing the factors set out in *Woods* ). The factors set out in *Woods* are not exhaustive; other factors may be considered. *Matter of Coil.*

**2.** The Debtor has paid the Six Month Debt and the Marital Residence Debt in full.

■ 6.  Applying the *Woods* factors to the instant facts, the Court concludes that the Lump Sum Debt is *not* in the nature of support. The first three *Woods* factors favor the Creditor or are neutral: the Lump Sum Debt is to be paid to the Creditor; at the time of the divorce, there was a marked disparity in the relative incomes of the parties; and the Lump Sum Debt is described in a multi-part paragraph dealing with all of the parties' debts. The fourth *Woods* factor, however, weighs heavily in favor of the Debtor. The fact that the Lump Sum Debt does *not* cease upon the remarriage or death of the Creditor, and is to be paid to the Creditor's estate if the Creditor predeceases the Debtor, is a strong indication that the debt is not in the nature of support. *See Matter of Balvich,* 135 B.R. 323 (N.D.Ind.1991)(fact that a marital obligation ceases upon the death of the obligee spouse suggests that the obligation is in the nature of support).

7.  Other factors also point to the conclusion that the Lump Sum Debt is in the nature of a property settlement. First, the Lump Sum Debt stands in contrast to other obligations the Debtor assumed, which obligations have many more of the indicia of being in the nature of support, than does the Lump Sum Debt. For example, the Six Month Debt, pursuant to which the Debtor agreed to pay the Creditor $3,300 per month for those months that the Creditor was responsible for making the house payment, was obviously intended to help cover the Creditor's living expenses immediately following the divorce, and until the parties could sell the marital residence. Additionally, the parties provided that the Six Month Debt would be taxable to the Creditor and deductible by the Debtor (a factor pointing to support), whereas the parties provided that the Lump Sum Debt would *not* be taxable to the Creditor or deductible by the Debtor (a factor pointing to property settlement).

8.  Perhaps the most important factor pointing to the Lump Sum Debt being in the nature of a property settlement, is the presence of support/non-dischargeability language in paragraph 18 of the Settlement Agreement (dealing with the Marital Residence Debt), and the absence of any such language in paragraph 20 (dealing with the Lump Sum Debt). The language of paragraph 18 demonstrates that when the parties wanted to make it clear that a debt was in the nature of support, they knew how to do it:

> 18  .... These obligations [*i.e.,* the Marital Residence Debt] are in the nature of support and are not intended by either party to be dischargeable or deferrable in any bankruptcy.

The parties included no such language in paragraph 20 dealing with the Lump Sum Debt, which fact points strongly in the direction of finding the Lump Sum Debt to be in the nature of a property settlement.

9.  For all the foregoing reasons, it is the conclusion of the Court that the Lump Sum Debt is in the nature of a property settlement, and is not rendered non-dischargeable by Section 523(a)(5).

*Dischargeability Pursuant to 11 U.S.C. Section 523(a)(15)*

10.  The Bankruptcy Reform Act of 1994 created a new subsection of debt that would be excepted from discharge. The new subsection, Section 523(a)(15), provides as follows:

> (a) A discharge under section 727 ... does not discharge an individual debtor from any debt—
>
> ....
>
> (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation ... unless—
>
>> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>>
>> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to

a spouse, former spouse, or child of the debtor. . . .

11. Where a creditor alleges that a debt is non-dischargeable pursuant to Section 523(a)(15), the *initial* burden of proof rests on the creditor to establish that the debt in issue is not of the kind described in 11 U.S.C. Section 523(a)(5), *i.e.*, that the debt in issue is a "property settlement" debt rather than a "support" debt. *See In re Gantz*, 192 B.R. 932 (Bankr.N.D.Ill.1996); *In re Florio*, 187 B.R. 654 (Bankr.W.D.Mo.1995); *In re Silvers*, 187 B.R. 648 (Bankr.W.D.Mo. 1995). After the creditor makes his or her initial showing, the burden of proof shifts to the debtor to establish that the debt should be discharged because (A) the debtor does not have the ability to pay, or (B) because the benefit of discharge to the debtor is greater than the detriment of discharge to the non-debtor spouse. *See, In re Gantz*, 192 B.R. 932, (Bankr.N.D.Ill.1996); *In re Slover*, 191 B.R. 886 (Bankr.E.D.Okla.1996); *In re Taylor*, 191 B.R. 760 (Bankr.N.D.Ill.1996); *In re Florez*, 191 B.R. 112 (Bankr.N.D.Ill. 1995).

12. Sub-sections (A) and (B) of Section 523(a)(15) are written in the disjunctive: a property settlement debt is non-dischargeable unless the debtor can prove (A) he is unable to pay the debt, *or* (B) the benefit to the debtor of discharge outweighs the detriment to the creditor of discharge. Accordingly, a debtor "must meet the burden on *only one of the two prongs* of Section 523(a)(15) to prevent the debt from being excepted from discharge." *In re Florez*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995).

13. Turning to subsection (A) of Section 523(a)(15), the Court examines the Debtor's ability to pay the Lump Sum Debt. The Debtor currently has monthly take home pay in the amount of $7,393.72; his monthly expenses are $7,863.00. The Debtor has a monthly shortfall of $470, which fact points to the conclusion that the Debtor does not have the ability to pay the Lump Sum Debt.

14. The Creditor suggested at trial that the Debtor has overstated his expenses on Schedule J of his petition. The Creditor especially questions the claimed expense of $5,413 that the Debtor lists as child support.

15. Contrary to the Creditor's position, the Court finds that the monthly expenses listed in Schedule J of the Debtor's petition are not overstated. The Debtor did not merely *agree* to pay what is admittedly a relatively large amount of child support; pursuant to the Child Support Order, the Debtor is under *court order* to pay $5,413 per month in child support. It is beyond the jurisdiction of this Court, to examine the wisdom or correctness of a decision by a state court to enhance a child support order above the child support guidelines. The state court gave as its reasons for the enhanced support order that the mother is a legal alien, and as such, is not qualified for government benefits programs, and that the parties wish the child to live in the life style she would if her parents were married.

16. The Court further finds that the other expenses the Debtor lists in Schedule J are both reasonable in amount, and necessary. The relatively high amount listed for laundry and dry cleaning ($150), is explained by the fact that the Debtor travels in connection with his work, and a great deal of the time, must rely on dry cleaning rather than on doing laundry at home. The relatively high amount listed for transportation ($250), is explained by the fact that the Debtor does not own an automobile, and must rely on taxis and public transportation both at home and during his extensive travels. Finally, the relatively high amount listed for hotel expenses ($150), is explained by the fact that the Debtor sometimes incurs hotel expenses in connection with his work that are not reimbursed by his employer.

17. For all the foregoing reasons, it is the conclusion of the Court that the Debtor does not have the ability to pay the Lump Sum Debt.

18. Turning to subsection (B) of Section 523(a)(15), the Court finds that the "balance of hardships" weighs in favor of the Debtor. The Creditor made no showing that the discharge of the Lump Sum Debt would cause substantial detrimental consequences to her. The Creditor has remarried. Both the Creditor and her current spouse are

employed. As a result of the divorce, the Creditor received approximately 90% of the parties marital property, including the Tanning Salon.[3] At the time of the divorce, the Creditor received over $18,000 in cash, representing all of the parties' 1994 income tax refunds. There are no children of the parties' marriage for which the Creditor must provide a home. No creditor is pursuing the Creditor for a marital debt that the Debtor agreed to pay, but then failed to pay.[4]

19. The legislative history for Section 523(a)(15) provides that the benefit of discharge to a debtor, should be sacrificed only if discharge would result in a substantial detriment to the non-debtor spouse.

> The debt will also be discharged if the benefit to the debtor of discharging it outweighs the harm to the obligee. For example, if a nondebtor spouse would suffer little detriment from the debtor's nonpayment of an obligation required to be paid under a hold harmless agreement (perhaps because it could not be collected from the nondebtor spouse or because the nondebtor spouse could easily pay it) the obligation would be discharged. The benefits of the debtor's discharge should be sacrificed only if there would be substantial detriment to the nondebtor spouse that outweighs the debtor's need for a fresh start.

H.R.Rep. No. 835, 103d Cong., 2nd Sess. 54 (1994). Given the lack of evidence that the Creditor would suffer a substantial detriment if the Lump Sum Debt were discharged, the Court concludes the "balance of hardships" weighs in favor of the Debtor.

20. For all the foregoing reasons, it is the conclusion of the Court that the Lump Sum Debt is not rendered non-dischargeable by Section 523(a)(15).

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that the Lump Sum Debt owed to the Creditor is not in the nature of support, and is not rendered nondischargeable by 11 U.S.C. Section 523(a)(5). It is further ORDERED that the Lump Sum Debt is not rendered non-dischargeable by 11 U.S.C. Section 523(a)(15).

---

**3.** The Creditor received the following property as a result of the divorce:
-$7,064.89, representing the Debtor's entire 401(K) plan at the time of the divorce;
-the Tanning Salon;
-40,000 frequent flier miles;
-the VEPCO stock;
-the 1994 tax refunds (approximately $18,000)
-the 1987 Chevrolet and leased Honda;
-various personal property

**4.** As noted in footnote 1 hereinabove, even though the Debtor received none of the parties' 1994 tax refund, he has agreed to pay the $3,113.67 overpayment to the Internal Revenue Service.