In re William R. DEAN, Jr., Debtor.

Caralyn Sharp, Plaintiff,

v.

William R. Dean, Jr., Defendant.

Bankruptcy No. 01–70404.
Adversary No. 01–7077.

United States Bankruptcy Court,
C.D. Illinois.

March 5, 2002.

**382**

Steven C. Ward, Springfield, IL, for plaintiff.

A. Mark Rabin, Springfield, IL, for defendant.

**OPINION**

LARRY LESSEN, Bankruptcy Judge.

This matter came before the Court for trial on February 4, 2002, on Count II of Plaintiff's Second Amended Complaint to Determine Dischargeability of Debt. Count I was resolved by the parties before trial. At issue is whether the obligation of William R. Dean, Jr. ("Debtor") to hold Caralyn Sharp ("Plaintiff") harmless for a marital debt to the Internal Revenue Service ("IRS") is nondischargeable under 11 U.S.C. § 523(a)(5)(B) or under 11 U.S.C. § 523(a)(15).

Plaintiff and Debtor were married on December 31, 1989. There were three children born during the marriage[1]. On November 7, 1996, a Judgment of Dissolu-

---

1. The record is unclear, but it appears that Plaintiff and Debtor may have been married to and divorced from one another prior to their marriage in 1989. Plaintiff's Affidavit of Income, Expenses, Assets and Debts states that the parties were married a total of 20 years. In addition, the Judgment states that all of the parties' three children were "born during their marriage." The testimony at trial indicated that one or more of the parties' children had reached the age of majority.

tion of Marriage ("Judgment") was entered by the Circuit Court of Sangamon County, Illinois. The Judgment incorporated the parties' Marital Settlement and Joint Parenting Agreement ("the Agreement") which was entered into on the same date and which provided in part as follows:

> [Husband] shall be solely responsible for any and all deficiency assessments, penalties, expenses and costs with respect to state and federal tax returns filed for the years 1990 and 1993 and any and all pertinent prior years which are currently the subject of an Internal Revenue Service tax audit and subsequent agreement. Said debt was initially $16,309.80 and said debt is currently approximately $10,947.25. In consideration of Wife waiving her right to back child support for the time period of January, 1996, through and including September 12, 1996, Husband has agreed to pay $600.00 per month towards the principle (sic) balance, interest and penalties pursuant to the Installment Agreement with the Internal Revenue Service, until paid in full, except that any payment to the Internal Revenue Service from tax refunds due to Wife shall apply to the debt without reimbursement from Husband. The terms of the marital settlement agreement shall control over the terms of the agreement signed with the Internal Revenue Service. [Husband] shall hold [Wife] harmless from any liability, costs, expenses or attorney's fees should the Internal Revenue Service attempt to collect said back taxes from her personally, except for payment of the IRS from tax refunds due wife.

Agreement at pp. 3–4.

Under the heading "Child Support", the Agreement further provided in part as follows:

> It is further agreed between the parties that the Husband will pay child support on behalf of the three minor children. Husband currently makes $600.00 per week base salary with a net take home pay of $453.03 per week. Husband shall continue to make child support payments each pay period which is weekly as follows:
>
> A. $110.00 per week for current support based on the current base pay;
>
> B. $42.45 per month for one half of the minor children's health insurance premium;
>
> C. Husband further agrees to pay 32% of his net take home pay on any increased base salary, bonuses, or commissions in excess of his current base salary of $600.00 per week. Child support will not be paid on non-cash prizes and $1,200 in bonuses per year....
>
> D. As of payment in full to the Internal Revenue Service at the rate of $600.00 per month, child support as stated in A and C above shall cease, with the exception of arrearage due, if any, and Husband shall pay $144.97 per week for child support based on his current base pay (net take-home pay of $453.03 per week) plus 32% of his net income from all salary in excess of $600.00 per week, bonuses, or commissions. Child support will not be paid on non-cash prizes and $1,200 in bonuses per year.

Agreement at p. 6.

In addition to withheld tax refunds, Plaintiff also paid $2,849.72 to the IRS when she obtained a mortgage to purchase a home which she had been buying contract-for-deed. (This was required by her lender to satisfy an IRS lien which had been placed on her property.) Plaintiff contends that the hold-harmless provisions

of the Agreement render this $2,849.72 debt nondischargeable as well as any amount still due to the IRS.

Debtor filed his voluntary Chapter 7 Petition in Bankruptcy on February 7, 2001. Debtor scheduled both the IRS and the Plaintiff as creditors. On May 4, 2001, Plaintiff filed her Adversary Complaint (subsequently amended on May 18, 2001 and on December 13, 2001). In his Answer to Plaintiff's Complaint, Debtor contends that the obligation to pay the debt to the IRS is in the nature of a property settlement and is, therefore, dischargeable. Debtor also contends that the $2,849.72 payment by Plaintiff to the IRS was made voluntarily and, therefore, the hold harmless provisions of the Agreement do not apply.

Section 523(a)(5) provides in relevant part as follows:

(a) A discharge under section 727... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse or child of the debtor for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement....

11 U.S.C. § 523(a)(5).

A debt owed to a former spouse or a debt to be paid to a third party in the nature of alimony, maintenance, or support pursuant to a divorce decree is nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(5). *See In re Coil,* 680 F.2d 1170, 1171 (7th Cir.1982); *In re Maitlen,* 658 F.2d 466, 468 (7th Cir.1981); *In re Bradaric,* 142 B.R. 267, 269 (Bankr.N.D.Ill. 1992). Obligations that arise as part of the division of marital property, however, are dischargeable under that section. *Coil, supra,* 680 F.2d at 1171.

■■■ The determination of whether a debt is in the nature of alimony, maintenance, or support is a matter of federal bankruptcy law rather than state law. *In re Haas,* 129 B.R. 531, 536 (Bankr.N.D.Ill. 1989); *In re Seidel,* 48 B.R. 371, 373 (Bankr.C.D.Ill.1984). In making this determination, the Court must look to the substance of the obligation and not to labels imposed by state law. *See Maitlen, supra,* 658 F.2d at 468; *In re Cockhill,* 72 B.R. 339, 341 (Bankr.N.D.Ill.1987). The critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support or divide marital property and debts. *In re Wright,* 184 B.R. 318, 321 (Bankr.N.D.Ill.1995).

■■ The Court finds the obligation arising from the Agreement for Debtor to hold Plaintiff harmless from the IRS debt to be in the nature of a support obligation and therefore nondischargeable under 11 U.S.C. § 523(a)(5). The most pertinent provisions of the Agreement are found directly under the heading "Child Support". The Agreement interweaves Debtor's payment of the IRS debt with the corresponding reduction in Debtor's child support payments. The intent of the parties is clear from the Agreement. Plaintiff knew that she was liable to the IRS on the subject debt, so she agreed to voluntarily waive a portion of the child support to which she was statutorily entitled. In exchange, Debtor agreed to pay the IRS debt at the rate of $600 per month and, in turn, clearly reaped the benefit of the Agreement's reduction of his child support obligation. It is undisputed (i) that Debtor's net weekly income at the time the Judgment was entered was $453.03 per week; (ii) that the statutory guidelines set Debtor's weekly child support obligation at

32% of his net weekly income; and (iii) that Debtor's child support obligation would have been $144.97 per week ($453.03 × .32 = $144.97). However, by agreement of the parties, Debtor's child support obligation was reduced to $110 per week because Debtor agreed to and was ordered to pay the IRS debt at the rate of $600 per month. This reduction of $34.97 per week lasted for approximately 225 weeks. Accordingly, Debtor paid $7,868.25 less in child support that the statutory guidelines would have required.

Debtor's benefit may actually have been much greater. The parties dispute whether Debtor owed back child support for the period January, 1996, to September 12, 1996. Debtor says he paid it voluntarily, even though there was no order to do so, but never received credit for it; Plaintiff says it wasn't paid. The language in the Agreement supports the Plaintiff's position—"In consideration of Wife waiving her right to back child support for the time period of January, 1996, through and including September 12, 1996, Husband has agreed to pay $600.00 per month...."
Agreement at p. 3.

In any case, Debtor voluntarily entered into the Agreement, reaped the benefit (many thousands of dollars) of the reduced child support obligation *at the expense of his children,* and now seeks to be discharged from his obligation to hold Plaintiff harmless from the obligation to the IRS. Debtor's position is untenable, both legally and equitably.

■ Debtor further argues that, to whatever extent the subject IRS debt might be nondischargeable, he should not be liable for the $2,849.72 paid to the IRS by Plaintiff in order to remove the IRS lien from her property. As stated above, Debtor contends that payment was made voluntarily and, therefore, the hold harmless provisions of the Agreement do not apply.

The hold harmless provision in the Agreement states: "[Husband] shall hold [Wife] harmless from any liability, costs, expenses or attorney's fees should the Internal Revenue Service attempt to collect said back taxes from her personally, except for payment to the IRS from tax refunds due wife." It seems rather obvious that the intent and purpose of the IRS in placing a lien on real estate Plaintiff was attempting to purchase was to collect said back taxes from her. Accordingly, the Court finds that the hold harmless provision of the Agreement applies to the $2,849.72 "voluntary" payment, and that debt is nondischargeable under 11 U.S.C. § 523(a)(5).

As the Court has made the determination that the subject debt is in the nature of a support obligation, 11 U.S.C. § 523(a)(5) applies and 11 U.S.C. § 523(a)(15) does not. However, even if the Court had found, as the Debtor contended, that the subject debt was in the nature of a property settlement, the result would have been the same.

11 U.S.C. § 523(a)(15) provides in pertinent part as follows:

(a) A discharge under section 727... of this title does not discharge an individual debtor from any debt—

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record... unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...; or

(B) discharging the debt would result in a benefit to the debtor that outweighs the detrimental consequences to the spouse, former spouse, or child of the debtor(.)

■ To prevail under § 523(a)(15), the debt in question must be other than the type set forth in § 523(a)(5), that was awarded by a court in the course of a divorce proceeding or separation. *In re Paneras*, 195 B.R. 395, 403 (Bankr.N.D.Ill. 1996) *citing In re Silvers*, 187 B.R. 648, 649 (Bankr.W.D.Mo.1995). Once this is established (and it is not disputed in our case), the burden of proving that the debt falls within either of the two exceptions to nondischargeability rests with the debtor. *In re Crosswhite*, 148 F.3d 879, 884–85 (7th Cir.1998). Hence, once the creditor's initial proof that the claim falls under Section 523(a)(15) of the Bankruptcy Code is made, the debt is excepted from discharge and the debtor is responsible for the debt unless the debtor can prove either of the two exceptions, subpart (A), the "ability to pay" test, or (B), the "detriment" test. *Id.*, 148 F.3d at 885.

■■ If the debtor can show the inability to pay the debt, the examination stops and the debtor prevails. The debt will remain dischargeable if paying the debt would reduce the debtor's income below that necessary for the support of the debtor and the debtor's dependents. *In re Hill*, 184 B.R. 750, 754 (Bankr.N.D.Ill. 1995). Because this language mirrors the disposable income test found in 11 U.S.C. § 1325(b)(2), most courts utilize an analysis similar to that used in determining disposable income in Chapter 13 cases. *Hill, supra* at 755; *In re Smither*, 194 B.R. 102, 108 (Bankr.W.D.Ky.1996); *In re Carroll*, 187 B.R. 197, 200 (Bankr.S.D.Ohio 1995); *In re Phillips*, 187 B.R. 363, 369 (Bankr.M.D.Fla.1995); *In re Hesson*, 190 B.R. 229, 237 (Bankr.D.Md.1995). However-

er, if the debtor can afford to make the payment, either in a lump sum or in installments over time, then the inquiry proceeds to Section 523(a)(15)(B) where the debtor has the burden to show that the benefit to the debtor from not having to pay the debt at issue is greater than the detrimental effects on the creditor—his spouse, former spouse, or child—who then must pay the debt. *In re Crosswhite, supra*, 148 F.3d at 885.

■ This Court has previously concluded that determining the dischargeability of debt under § 523(a)(15) requires the evaluation of three factors: (1) the debtor's ability to pay the subject debt, (2) the non-debtor former spouse's ability to pay the subject debt, and (3) the financial repercussions to the non-debtor former spouse of discharging the debt. *In re Jenkins*, 202 B.R. 102, 104–05 (Bankr.C.D.Ill.1996). As indicated above, a finding that the debtor lacks the ability to repay the subject debt ends the inquiry with the first factor and the debt is deemed dischargeable. If, however, the debtor is found to have the ability to repay the subject debt, the inquiry proceeds to consider the second and third factors—the non-debtor former spouse's ability to pay the subject debt and the financial repercussions of leaving the non-debtor former spouse to do so.

■ Debtor has the ability to repay the debt to the IRS and the debt to Plaintiff. He takes home $2,800 per month (and is probably over-withholding on his federal income taxes) and his monthly expenses total $2,631.50. However, Debtor's budget is not particularly tight ($125 for entertainment, $125 telephone, $125 clothing). With minor adjustments, the Debtor could find sufficient extra money each month to make installment payments on the subject debts and have them retired in just a few years.

There was some testimony at trial that one of Debtor's children, Jennifer, might be moving out of the Plaintiff's residence and in with the Debtor, and, according to Debtor's testimony, his Affidavit of Income, Expenses, Assets and Debts reflects that arrangement. There was also testimony that Debtor may have to acquire a larger residence because his home has only one bedroom. However, this possible change in circumstances and its effect on Debtor's household expenses is too speculative to alter the Court's ruling.

As the 11 U.S.C. § 523(a)(15)(A) exception has not been met, the inquiry proceeds to § 523(a)(15)(B). The Court finds that the benefit to the Debtor from not having to pay the debts at issue is less than the detrimental effects on the Plaintiff if she must then pay the IRS debt and forego repayment of the $2,849.72 she paid to the IRS. Plaintiff is remarried and she and her husband are both gainfully employed. Plaintiff is trained as a registered nurse and is employed in that field. The net monthly household income, including child support, totals $2,825 per month. Plaintiff's family household expenses substantially exceed the household income. In fact, Plaintiff's Affidavit of Income and Expenses indicates that the household living expenses total $5,225.08 per month. This total includes payments of $850 per month on credit cards. Plaintiff lists five credit cards, which carry an aggregate balance of $53,150. Also included in the monthly living expenses are vehicle payments totaling $630 per month and a mortgage payment of $1,352.00 per month. Their corresponding secured debt totals approximately $181,200. Plaintiff and her husband do not have assets to counterbalance their debt level. Other than pensions and perhaps some cash surrender value in a life insurance policy, Plaintiff and her husband's only assets are $2,000 in savings, $15,000 in household goods and furniture, $30,000 equity in their home, and very little equity in vehicles. In sum, Plaintiff and her husband have a very substantial debt load with income barely sufficient to service that debt. Moreover, Plaintiff and her husband do not have assets which could be liquidated with the proceeds being used to pay down the debt. Requiring Plaintiff to bear the burden of repaying the subject debt to the IRS and foregoing repayment of the $2,849.72 she paid the IRS would likely result in the financial collapse of her family. Accordingly, the Court finds that the benefit to Debtor of discharging his debts to the IRS and to Plaintiff is outweighed by the detrimental consequences to the Plaintiff if the debts are discharged.

For the reasons set forth above, the Court finds that Debtor's obligation as set forth in the Marital Settlement and Joint Parenting Agreement, made a part of the Judgment of Dissolution of Marriage, to hold Plaintiff harmless from any liability to the Internal Revenue Service is nondischargeable under 11 U.S.C. § 523(a)(5). The Court further finds that even if the subject debt was in the nature of a property settlement rather than a support obligation, said debt would be nondischargeable under 11 U.S.C. § 523(a)(15).

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that the obligation of Debtor William R. Dean, Jr., as set forth in the Marital Settlement and Joint Parenting Agreement, made a part of the Judgment of Dissolution of Mar-

riage, to hold Plaintiff Caralyn Sharp harmless from any liability to the Internal Revenue Service be and is hereby nondischargeable pursuant to 11 U.S.C. § 523(a)(5).

IT IS FURTHER ORDERED that, had the Court concluded that the subject obligation was in the nature of a property settlement, said obligation of Debtor William R. Dean, Jr. to hold Plaintiff Caralyn Sharp harmless from any liability to the Internal Revenue Service would be nondischargeable pursuant to 11 U.S.C. § 523(a)(15).